MATE v WOLVERINE MUTUAL INSURANCE COMPANY

Docket No. 201125. Submitted March 11, 1998, at Grand Rapids. Decided December 1, 1998, at 9:05 A.M. Leave to appeal sought.

Jeanette Mate, individually and as personal representative of the estate of Shane Mate, deceased, brought an action in the Kent Circuit Court against Wolverine Mutual Insurance Company, Buiten, Tamblin, Steensma & Associates, Inc., and Paul Buiten, seeking underinsurance motorist benefits under an automobile insurance policy written by Wolverine and sold by the Buiten agency and agent Paul Buiten. At the time of the accident, Shane was eighteen years old and resided with his mother, Jeanette. Jeanette had been divorced from James Mate three years earlier, and they lived in separate households. James is neither the father nor a relative of Shane. At the time of the accident, Jeanette owned an automobile insured by Wolverine. However, the sole named insured of the policy was James Mate. The underinsurance motorist provision extended coverage only to the named insured, the insured's spouse if a resident of the same household, and any family member. Family member was defined as "a person related to you [the named insured or a spouse if a resident of the same household] by blood, marriage, or adoption who is a resident of your household." The court, Dennis B. Leiber, J., granted summary disposition in favor of the defendants. Jeanette Mate, as personal representative of the estate of Shane Mate, deceased, appealed.

The Court of Appeals held:

1. The plaintiff's claim of breach of contract is without merit. The policy did not by its terms provide underinsurance coverage to Shane because he was not a named insured, was not related to James Mate, and was not a resident of James Mate's household.

2. The court properly found that the Buiten agency and Paul Buiten were not acting as agents of Wolverine.

3. The court properly granted Wolverine's motion for summary disposition regarding the plaintiff's assertion of equitable estoppel. Neither Wolverine nor Buiten intentionally or negligently induced Shane to believe that he would be insured under the policy for underinsurance benefits. It was Jeanette Mate's failure to notify Buiten that Shane was living in her household that resulted in

Shane's lack of underinsurance coverage. Buiten had no obligation to advise Shane regarding the adequacy of his coverage, and his silence with regard to such adequacy cannot constitute the culpable negligence or intentional act required for equitable estoppel.

4. The court properly granted Buiten's motion for summary disposition with regard to the plaintiff's negligence claim alleging professional malpractice. The plaintiff failed to support the claim that a special relationship existed between Buiten and Shane.

5. The court properly denied the plaintiff's request for reformation of the insurance contract. Shane was not a party to the insurance contract, and the plaintiff did not allege fraud or mutual mistake but, rather, alleged Buiten was obligated to inform Shane of his need for underinsurance coverage.

6. The plaintiff in her status as personal representative of Shane's estate has no standing to assert the tort claims. Absent a duty, assumed or otherwise, the defendants owed no obligation to the plaintiff in her status as personal representative. Here, no duty running to the plaintiff in her status as personal representative was alleged.

Affirmed.

MARKEY, P.J., dissenting in part, stated that the matter should be reversed and remanded for further proceedings. Genuine issues of material fact exist with regard to the claims alleging breach of contract, that the Buiten agency was Wolverine's agent, equitable estoppel, and professional malpractice resulting from a breach of a duty of care arising from a special relationship between Jeanette Mate and the Buiten agency.

1. INSURANCE — AUTOMOBILES — UNDERINSURANCE PROTECTION.

The scope, coverage, and limitations of underinsurance automobile insurance protection, which is optional insurance not required by law, are governed by the insurance contract and the law pertaining to contracts.

2. INSURANCE — AGENCY — INDEPENDENT AGENTS.

An independent insurance agent or broker ordinarily is an agent of the insured, not the insurer; testimony by an independent insurance agent or broker that the agent or broker has the power to place insurance with various insurance companies is usually sufficient to establish that the independent agent or broker is the agent of the insured, not the insurer.

3. ESTOPPEL — EQUITABLE ESTOPPEL.

Equitable estoppel arises only when a person by acts, representations, or admissions, or by silence when the person ought to speak out,

intentionally or through culpable negligence, induces another person to believe certain facts to exist and such other person rightfully relies and acts on such belief, so that the latter person will be prejudiced if the former is permitted to deny the existence of such facts.

4. INSURANCE — ADEQUACY OF POLICY'S COVERAGE.

An insurance agent generally does not have an affirmative duty to advise a client regarding the adequacy of a policy's coverage; the insured is obligated to read the policy and raise questions concerning coverage within a reasonable time after issuance.

5. INSURANCE — ADEQUACY OF POLICY'S COVERAGE — SPECIAL RELATIONSHIPS.

Something more than the standard policyholder-insurer relationship is required in order to create a question of fact regarding the existence of a special relationship obligating the insurer to advise the policyholder about the policyholder's insurance coverage; there must be a longstanding relationship in which there is some type of interaction regarding a question of coverage, with the insured relying on the expertise of the insurance agent to the insured's detriment.

6. CONTRACTS — REFORMATION — NONPARTIES.

Courts will reform a contract to reflect the parties' actual intent where there is clear evidence that both parties reached an agreement, but, as a result of mutual mistake, or mistake on one side and fraud on the other, the contract does not express the true intent of the parties; a person who was not a party to the contract cannot obtain reformation of the contract.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather* and *Robert K. Pike*), for the plaintiff.

*Gruel, Mills, Nims & Pylman, LLP* (by *Scott R. Melton*), for Wolverine Mutual Insurance Company.

*Sullivan, Ward, Bone, Tyler & Asher, P.C.* (by *Michelle A. Thomas*), for Buiten, Tamblin, Steensma & Associates, Inc., and Paul Buiten.

Before: MARKEY, P.J., and GRIFFIN and WHITBECK, JJ.

GRIFFIN, J. Plaintiff Jeanette Mate, as personal representative of the estate of Shane Mate, deceased,

appeals as of right orders granting summary disposition in favor of defendants. Although Jeanette Mate (now Jeanette Hylarides) in her individual capacity was a party plaintiff in the lower court and filed a claim of appeal, Jeanette Mate, individually, has not filed a brief with this Court and therefore has abandoned any individual claims. MCR 7.216(A)(10). MCR 7.212(C)(5). *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). We affirm.

I

The following are facts not in dispute. Shane Mate was killed in a motor vehicle accident on October 17, 1992. At the time of the tragic mishap, Shane Mate was an adult, eighteen years old, residing with his mother, Jeanette Mate. James Mate is Jeanette Mate's ex-husband and, despite the similarity of last names, is neither the father nor a relative of Shane Mate. Further, at the time of the accident, Jeanette Mate and her ex-husband James Mate resided in separate households.

On October 17, 1992, Jeanette Mate owned a 1985 Chrysler LeBaron automobile[1] that was insured by defendant Wolverine Mutual Insurance Company (Wolverine). However, the sole named insured of the policy was James Mate, who was divorced from Jeanette in 1989.

Plaintiff personal representative brought the present complaint against defendants seeking underinsurance motorist benefits under the automobile insurance policy written by defendant Wolverine and sold

---

[1] It is unclear whether James Mate possessed an insurable interest in the vehicle. Nevertheless, this issue is waived because it was not raised in the lower court or on appeal.

by defendants Buiten, Tamblin, Steensma & Associates, Inc., and agent Paul Buiten (collectively Buiten). The lower court granted summary disposition in favor of defendants Wolverine and Buiten pursuant to MCR 2.116(C)(10).

II

STANDARD OF REVIEW

A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim. *Panich v Iron Wood Products Corp*, 179 Mich App 136, 139; 445 NW2d 795 (1989). In *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996), our Supreme Court set forth the following standards for deciding such a motion:

> In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4).
>
> In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. *Neubacher v Globe Furniture Rentals*, 205 Mich App 418, 420; 522 NW2d 335 (1994). The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. *Id.* Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact

exists. *McCart v J Walter Thompson*, 437 Mich 109, 115; 469 NW2d 284 (1991). If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. *McCormic v Auto Club Ins Ass'n*, 202 Mich App 233, 237; 507 NW2d 741 (1993).

On appeal, we review de novo the lower court's decision whether to grant or deny summary disposition. *Pinckney Community Schools v Continental Casualty Co*, 213 Mich App 521, 525; 540 NW2d 748 (1995).

III

BREACH OF CONTRACT

Underinsurance automobile insurance protection is not required by law and therefore is optional insurance offered by some, but not all, Michigan automobile insurance companies. Because such insurance is not mandated by statute, the scope, coverage, and limitations of underinsurance protection are governed by the insurance contract and the law pertaining to contracts. *Auto-Owners Ins Co v Leefers*, 203 Mich App 5, 10-11; 512 NW2d 324 (1993). As the Supreme Court stated in *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 524-525; 502 NW2d 310 (1993), regarding substantially similar uninsured motorists benefits:

PIP [personal protection insurance] benefits are mandated by statute under the no-fault act, MCL 500.3105; MSA 24.13105, and, therefore, the statute is the "rule book" for deciding the issues involved in questions regarding awarding those benefits. On the other hand, the insurance policy itself, which is the contract between the insurer and the insured, controls the interpretation of its own provisions providing benefits not required by statute. Therefore, because uninsured motorist benefits are not required by

statute, interpretation of the policy dictates under what cir-
cumstances those benefits will be awarded.

First, we conclude that plaintiff's claim of a breach
of the insurance contract is without merit. It is clear
that the Wolverine policy of automobile insurance did
not by its terms provide underinsurance coverage to
Shane Mate. The underinsurance motorist provision
at issue extends coverage under the policy only to
"the *named insured*, his spouse if a resident of the
same household and any family member." Family
member is defined in the policy as

> a person related to *you* [the named insured or a spouse if a
> resident of the same household] by blood, marriage or
> adoption who is a resident of your household. [Emphasis
> added.]

Shane Mate was neither a named insured in the policy
nor was he related to James Mate or a resident of
James Mate's household. Accordingly, the lower court
correctly granted summary disposition in regard to
plaintiff's breach of contract claim.

IV

AGENCY

Next, plaintiff claims that a genuine issue of mate-
rial fact exists regarding whether Buiten was an agent
of Wolverine. We disagree.

"Ordinarily, an independent insurance agent or bro-
ker is an agent of the insured, not the insurer." *Har-
wood v Auto-Owners Ins Co*, 211 Mich App 249, 254;
535 NW2d 207 (1995); accord *Mayer v Auto-Owners
Ins Co*, 127 Mich App 23, 26; 338 NW2d 407 (1983). In
*Harwood, supra* at 254, we stated:

As did the insurance agent in *Mayer,* Thomas Barron, an independent agent who worked for the Roscommon Agency and who sold the subject policy to Russell, testified that he was an independent insurance agent and had the power to place insurance with various insurance companies. Pursuant to *Mayer, supra,* defendant Roscommon Agency was the agent of plaintiff, not of defendant Auto-Owners. Because there is no question of material fact that defendant Roscommon Agency was not the agent of defendant Auto-Owners, the trial court properly granted defendant's motion for summary disposition.

Like the insurance agents in *Mayer* and *Harwood,* Paul Buiten testified that Buiten & Associates is an independent insurance agency with the power to place insurance with various insurance companies, including Wolverine. Such testimony is usually sufficient to establish that an independent insurance agent is the agent of the insured, not the insurer. Plaintiff relies on Paul Buiten's deposition testimony to the effect that Buiten considers the insureds to be his "clients." However, our review of Paul Buiten's testimony in context reveals that in responding to plaintiff's question regarding whether Buiten & Associates was acting as Wolverine's agent, Paul Buiten testified that he was not Wolverine's agent but rather "the insureds are our clients." Viewing the facts in a light most favorable to plaintiff, there is no genuine issue of material fact regarding Buiten's status as an agent. The lower court properly found that Buiten was not acting as the agent of Wolverine.

V

ESTOPPEL

Next, plaintiff contends that the trial court erred in granting defendant Wolverine's motion for summary

disposition because a genuine issue of material fact allegedly exists regarding whether Wolverine is estopped from disclaiming coverage for plaintiff's claim.

In certain circumstances, estoppel may operate to hold a defendant insurer, agent, or broker liable for coverage that differs from the express terms of the contract. *Parmet Homes, Inc v Republic Ins Co,* 111 Mich App 140, 148; 314 NW2d 453 (1981). Equitable estoppel arises only " ' "when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." ' " *Lichon v American Universal Ins Co,* 435 Mich 408, 415; 459 NW2d 288 (1990) (citations omitted).

Plaintiff argues that Buiten's silence regarding the fact that Shane Mate was not "fully covered" under the automobile insurance policy satisfies the first element of equitable estoppel. Plaintiff has presented no evidence that either Buiten or Wolverine intentionally or negligently induced Shane Mate to believe that he would be insured under the policy for underinsurance benefits. Although the record reveals that both Buiten and Wolverine were aware that Jeanette and James Mate were living at separate addresses, plaintiff presented no evidence that defendants were aware of Shane Mate's presence in either household. Jeanette Mate testified that she had not inquired regarding the type of coverage Shane would receive but merely assumed that he would be "covered" under the policy.

"Generally, an insurance agent does not have an affirmative duty to advise a client regarding the adequacy of a policy's coverage." *Bruner v League General Ins Co*, 164 Mich App 28, 31; 416 NW2d 318 (1987). "Instead, the insured is obligated to read the policy and raise questions concerning coverage within a reasonable time after issuance." *Id.* Therefore, it was Jeanette Mate's failure to notify Buiten that Shane was living in her household that resulted in Shane's lack of underinsurance coverage. Because Buiten was under no obligation to advise Shane Mate regarding the adequacy of his coverage,[2] Buiten's silence with regard to such adequacy cannot constitute the culpable negligence or intentional act required for equitable estoppel. Therefore, the trial court properly granted Wolverine's motion for summary disposition regarding plaintiff's assertion of equitable estoppel.

VI

NEGLIGENCE—PROFESSIONAL MALPRACTICE

Plaintiff personal representative also argues that a genuine issue of material fact exists regarding the existence of a special relationship between Shane Mate and Buiten. We disagree. In *Bruner, supra* at 34, we stated the following test for a special relationship:

> While it is perhaps difficult to derive any absolute rule of law from these cases, it is apparent that something more than the standard policyholder-insurer relationship is required in order to create a question of fact as to the existence of a "special relationship" obligating the insurer to

---

[2] We disagree with plaintiff's underlying premise that automobile insurance without optional underinsurance protection is "inadequate coverage."

advise the policyholder about his or her insurance coverage. There must be, in a long-standing relationship, some type of interaction on a question of coverage, with the insured relying on the expertise of the insurance agent to the insured's detriment.

Here, no relationship of any kind existed between Shane Mate and Buiten. The record lacks any evidence that Buiten advised Shane in any way regarding the adequacy of his insurance coverage. In fact, Paul Buiten testified that he was unaware that Shane even existed. Because plaintiff personal representative has failed to sustain her burden of submitting evidence in support of her claim of a special relationship between Shane and Buiten, the trial court correctly granted summary disposition in favor of defendant Buiten. MCR 2.116(G)(4).

VII

REFORMATION OF CONTRACT

Finally, plaintiff personal representative contends that a genuine issue of material fact exists concerning reformation of the insurance policy on which plaintiff bases her claims.

"Courts will reform an instrument to reflect the parties' actual intent where there is clear evidence that both parties reached an agreement, but as the result of mutual mistake, or mistake on one side and fraud on the other, the instrument does not express the true intent of the parties." *Olsen v Porter*, 213 Mich App 25, 29; 539 NW2d 523 (1995); see also *Harwood, supra* at 253-254. Plaintiff personal representative alleges neither fraud nor mutual mistake by Buiten, but, rather, claims that Buiten was obligated to inform Shane Mate of his need for underinsurance

coverage. Because Shane Mate was not a party to the insurance contract, plaintiff cannot obtain reformation of the contract. *Id.* at 254. In addition, because plaintiff has not alleged fraud or mutual mistake in the insurance contract, the trial court properly denied plaintiff's request to reform the insurance contract.

VIII

THE DISSENT

This is a contract case with related claims of equitable estoppel, professional malpractice, and contract reformation. The present case does not involve statutorily required no-fault first-party benefits or residual liability insurance, but, rather, optional contractually based underinsurance benefits. The dissent mistakenly believes that "the problem here is not one of 'adequate coverage'" but rather no insurance coverage at all. *Post* at 34. The dissent writes "Jeanette Mate had no knowledge that, in reality, neither she nor her son, as her resident relative, had any no-fault coverage at all because of the Buiten agency's placing her vehicle under James Mate's policy." *Post* at 34-35. First, as permissive drivers, not specifically excluded, both Jeanette Mate and Shane Mate would be insured under the policy for residual tort liability, MCL 500.3131; MSA 24.13131, MCL 257.520(2); MSA 9.2220(2). See, generally, *Citizens Ins Co of America v Federated Mut Ins Co*, 448 Mich 225; 531 NW2d 138 (1995). Further, under the first-party priority scheme, both would be insured for PIP benefits if injured while occupying the vehicle. MCL 500.3114(4)(a); MSA 24.13114(4)(a). Because Shane Mate's death arose out of the use and operation of a motor vehicle, we assume that all applicable no-fault benefits have been

paid to his estate by the insurance carrier with priority. See, generally, MCL 500.3114; MSA 24.13114. The dissent fails to recognize the important legal distinction between an insured under the policy and a "named insured." See, generally, *Transamerica Ins Corp of America v Hastings Mut Ins Co*, 185 Mich App 249; 460 NW2d 291 (1990). As indicated above, persons who are not "named insureds" under a contract of insurance may nonetheless be insured for defined risks.

Our dissenting colleague writes as if Jeanette Mate, individually, were the plaintiff. She is not. The plaintiff is Jeanette Mate, as personal representative of the *estate of Shane Mate, deceased*, not Jeanette Mate individually. Although the dissent's position on the issues of agency and estoppel is contrary to established Michigan law, the more fundamental error of the dissent is a misunderstanding that plaintiff personal representative has no standing to assert the tort claims. Absent a duty, assumed or otherwise, defendants owed no obligation to plaintiff personal representative. See, generally, *Panich, supra*. Here, no duty to plaintiff personal representative is alleged.

In conclusion, we have not "bizzarely twisted both the facts of this case and their application to the pertinent law," as alleged by the dissent. *Post* at 34. Rather, we have applied the established law to the facts, parties, and claims.

Affirmed.

Whitbeck, J., concurred.

Markey, P. J. (*concurring in part and dissenting in part*). I disagree with the majority's analysis and disposition of the claims for breach of contract, agency,

estoppel, and professional negligence by plaintiff Jeanette Mate, as personal representative of the estate of Shane Mate, deceased, but I agree with the majority in their resolution of plaintiff's claim for reformation of contract. Although I have the utmost respect for my majority colleagues, I must dissent on these issues.

I

### BREACH OF CONTRACT

On appeal, a trial court's grant or denial of summary disposition is reviewed de novo. *Pinckney Community Schools v Continental Casualty Co*, 213 Mich App 521, 525; 540 NW2d 748 (1995). This Court must review the record in the same manner as the trial court to determine whether the moving party was entitled to judgment as a matter of law. *Phillips v Deihm*, 213 Mich App 389, 398; 541 NW2d 566 (1995). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual support for a claim. A court must consider the pleadings, depositions, affidavits, admissions, and other documentary evidence submitted by the parties. The test is whether the kind of record that might be developed, given the benefit of any reasonable doubt to the nonmoving party, would leave open an issue on which reasonable minds might differ. The motion must not be granted unless the nonmoving party's claim is impossible to support because of some deficiency that cannot be overcome. See *Shallal v Catholic Social Services of Wayne Co*, 455 Mich 604, 609; 566 NW2d 571 (1997); *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).

Unfortunately, the majority provides a skeletal rendition of the facts and a terse discussion of plaintiff's breach of contract claim. Its analysis completely misses the point and consequently fails to address the true breach of contract issue. The breach of contract must be and is the threshold issue for analysis in this case. An insurance policy is first and foremost a contract. Specifically, an insured pays money in the form of premiums to obtain, in this case, no-fault automobile insurance. After Jeanette Mate and James Mate were divorced in 1989, Jeanette still required automobile insurance coverage for herself and, concomitantly, for anyone else living in her household. In 1991, defendant Buiten, Tamblin, Steensma & Associates, Inc. (the Buiten agency) first properly sold Jeanette a separate no-fault policy. Then, in 1992, the agency merely added the vehicles Jeanette owned to James Mate's no-fault policy, issued certificates of insurance for those vehicles, and accepted premiums for the coverage. In other words, defendant Wolverine Mutual Insurance Company, through the Buiten agency, agreed to provide no-fault insurance to Jeanette Mate, i.e., the parties entered into a contract. In reality, Jeanette and her son, Shane, fell within no definition of an insured under Wolverine's policy language. Consequently, Jeanette Mate had no no-fault coverage whatsoever,[1] which, in turn, means that no one residing in her home was insured under the Wolverine policy she believed provided her no-fault coverage. Thus, when the majority decides the breach of contract claim in reference to whether the policy cov-

---

[1] Defense counsel conceded during oral argument that Jeanette herself was not an insured under James Mate's no-fault policy either.

ered Shane Mate for underinsured motorists benefits, it is putting "the cart before the horse." Obviously, there must be a policy in effect before one can analyze its terms of coverage. At the time of the accident, the only persons truly insured under the policy were James Mate and any of his resident relatives.

Here, though the majority recites the applicable standard of review, I believe it impossible to consider these facts in a light most favorable to the nonmoving party and apply the standards for the grant or denial of summary disposition and not find it evident that a genuine issue of material fact exists regarding whether plaintiff has a viable cause of action for breach of contract. Thus, I would reverse the grant of summary disposition with regard to plaintiff's breach of contract claim.

II

AGENCY

Plaintiff also claims that a genuine issue of material fact exists regarding whether the Buiten agency was an agent of Wolverine Mutual Insurance Company. I again agree that a genuine issue of material fact exists with regard to this claim.

The majority correctly quotes from *Harwood v Auto-Owners Ins Co*, 211 Mich App 249, 254; 535 NW2d 207 (1995), and *Mayer v Auto-Owners Ins Co*, 127 Mich App 23, 26; 338 NW2d 407 (1983), when it states that "[o]rdinarily, an independent insurance agent or broker is an agent of the insured, not the insurer." *Ante* at 20. In their respective analyses, *Harwood* refers only to *Mayer* and *Mayer* refers only to 16 Appleman, Insurance Law & Practice, § 8722, pp 322-324, and to 2 Restatement 2d, Agency, § 376,

comment *a*, p 173. *Mayer, supra.* This issue received very cursory treatment in *Harwood* and *Mayer* and by the majority in this case as well. Initially, the proposition that an independent agent is an agent of the insured is modified by the word "ordinarily." It is not black letter law. Moreover, even as a general proposition it is suspect, and its legal underpinnings weak. The precise problem with the perfunctory conclusion that an insurance agency is the agent of the insured, here purportedly Jeanette Mate, is articulated by Keeton & Widiss, Insurance Law, A Guide to Fundamental Principles, Legal Doctrines, and Commercial Practices (Student ed, 1988), § 2.5b(3), pp 83-84:

> The term "insurance broker" is often used to characterize an individual who is thought to act primarily on behalf of a purchaser in an insurance transaction. . . . Because brokers receive compensation from the insurers, it seems evident that a persuasive argument can be made for not treating a broker as an agent of the insurance purchaser. In response to this point, it has sometimes been urged that a "broker" is an agent of the insurer, but only for the limited purpose of collecting premiums on policies transmitted to the broker for delivery. Although such a limited agency relationship may actually exist in a few situations, it almost certainly is the exception rather that the general pattern. The relationships between most brokers and the insurance companies they place coverages with typically involve significantly greater ongoing contacts and interactions than the relationship with any individual applicant for insurance or insured. *Accordingly, so long as the general rule prevails that an agent may not serve two principals simultaneously, it seems clear that in most contexts there is more justification for treating a broker as an agent of an insurer than as an agent of the purchaser.*

Furthermore, the treatise goes on to discuss the liability of a broker and an insurer when an insurance

company has been specified or otherwise indicated. The authors note:

> The insurance purchaser usually is not versed in the intricacies of the insurance business. The prospective insured seeks the assistance of a specialist and relies on the sales representative's knowledge of both the insurance business in general and insurance coverages in particular. *If a sales representative fails to secure the appropriate insurance—by purporting to make a contract that is in fact beyond his or her authority, or arranging for coverage that turns out to be defective in some way, or fails to make any insurance arrangements—the applicant or purchaser should have a cause of action against the sales representative who has committed such a misfeasance without regard as to whether the insurance company has explicitly or implicitly been identified. This seems even more justified today than in the past, as agents and brokers have increasingly promoted their professional expertise in serving the public's insurance needs.*
>
> \*      \*      \*
>
> Finally, a sales representative often acts on behalf of both the insurer and the applicant, and such an intermediary owes a duty to exercise due care and reasonable diligence in the pursuit of the insured's or the applicant's business. [Keeton, § 2.5(c)(2), pp 89-90 (emphasis added).]

In this case, Paul Buiten referred to Jeanette and her ex-husband as his "clients." He further indicated that "as agents, we're contracted with insurance companies to place business with them. We are given binding authority."

The tenor of Mr. Buiten's testimony suggests that from his perspective his primary relationship is with the insurance companies with which he contracts and by which he is paid. Hence, because there is no well-settled law in Michigan unequivocally characterizing

an independent insurance agent as the agent of the insured, there exists a genuine issue of both law and fact. Moreover, depending on the facts of a specific case, an agent could be dually serving two principals.

The analysis proffered by Keeton and Widiss takes into account the realities of the relationship between an independent agent and the insurance company and provides a far more fair and sensible approach to the characterization of the intertwined relationships among insurers, insureds, and independent agents or brokers.

Thus, for these reasons and because I do not believe either *Harwood* or *Mayer* is controlling on this issue, MCR 7.215(H)(1), I believe there exists a genuine issue of material fact regarding whether the Buiten agency was an agent of Wolverine Mutual Insurance Company, or a dual agent of both Wolverine and Jeanette Mate.

III

EQUITABLE ESTOPPEL

I also firmly believe that there exists a genuine issue of material fact regarding whether Wolverine is estopped from disclaiming coverage for plaintiff's claim. As the majority noted, there are circumstances where estoppel may operate to hold a defendant insurer, agent, or broker liable for coverage that differs from the express terms of the contract. *Parmet Homes, Inc v Republic Ins Co*, 111 Mich App 140, 148; 314 NW2d 453 (1981). Equitable estoppel exists

" 'when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts

on such belief so that he will be prejudiced if the former is permitted to deny the existence of such facts.' " [*Lichon v American Universal Ins Co*, 435 Mich 408, 415; 459 NW2d 288 (1990) (citations omitted)].

Here, the record evidences that both the Buiten agency and Wolverine knew these important facts: (1) that Jeanette and James Mate had been divorced for several years and were living at separate addresses, (2) that Jeanette Mate was legally required to have her own no-fault insurance policy before she or anyone living in her residence would be covered, and (3) that Jeanette Mate *needed*, asked for, and believed she had no-fault insurance because she owned, at all relevant times, at least one vehicle requiring insurance. Nonetheless, the Buiten agency, despite the accurate information contained within its own records and a letter of inquiry from Wolverine requiring verification of several of these pivotal facts, either intentionally or negligently provided Jeanette Mate with no-fault insurance certificates allowing her to believe she and her resident relatives, in fact, had no-fault insurance. In addition, Jeanette Mate, a long-time client, asked the Buiten agency various questions about coverage, and, as expected and as usual, she relied upon its answers, this time to her detriment.

The majority's rationale for its decision regarding the issue of equitable estoppel is that "[p]laintiff has presented no evidence that either Buiten or Wolverine intentionally or negligently induced *Shane Mate* to believe that he would be insured under the policy . . . ." *Ante* at 22 (emphasis added). That statement is a nonsequitur. It also defies common sense. Shane, as Jeanette Mate's teenage son, would only have been

covered, i.e., be an insured, as a resident relative under his mother's policy. In other words, under this factual situation, it is undisputed that Jeanette would be and should have been the named insured on the policy, so it is irrelevant whether Buiten or Wolverine were aware of Shane Mate's presence in either household. Shane had no driver's license, owned no vehicle, and obviously was not the primary driver of any vehicle. He would have been covered solely because of his residence with an insured, i.e., either Jeanette Mate or James Mate, as his stepfather. Jeanette Mate, as Shane's parent, as the only potential named insured on an insurance policy, and now, tragically, as the personal representative of Shane's estate, is the *only* person pertinent to the issue of equitable estoppel.

Moreover, the majority grossly misunderstands the issue and instead frames it primarily as one regarding the adequacy of a policy's coverage. I agree with the majority's citations of *Bruner v League General Ins Co*, 164 Mich App 28; 416 NW2d 318 (1987), wherein it is stated that an insurance agent does not have an affirmative duty to advise a client regarding the adequacy of a policy's coverage and, indeed, an insured *is* obligated to read an insurance policy and raise any questions the insured might have concerning coverage within a reasonable time after issuance.

Unfortunately, the problem here is not one of "adequate coverage." The majority has bizarrely twisted both the facts of this case and their application to the pertinent law in concluding that Shane Mate's state of mind had anything whatsoever to do with whether he should have had no-fault coverage. As stated previously, Jeanette Mate had no knowledge that, in real-

ity, neither she nor her son, as her resident relative, had any no-fault coverage at all because of the Buiten agency's placing her vehicle under James Mate's policy. When Jeanette spoke to the Buiten agency at one point before the accident, she asked whether there was any reason she could not be covered under her ex-husband's policy. In response, Buiten then listed her vehicles under her former husband's policy, accepted premiums for payment on that policy, issued no-fault insurance certificates, and, by doing so, deluded Jeanette Mate into believing she had no-fault coverage for herself and, therefore, for her resident relatives. As a result, she allowed a separate no-fault policy Buiten previously had sold her to lapse, which had, in fact, contained provisions for both underinsured and uninsured motorist benefits. Under these facts, the majority's conclusion, *ante* at 23, that "[t]herefore, it was Jeanette Mate's failure to notify Buiten that Shane was living in her household that resulted in Shane's lack of underinsurance coverage" is mystifying and has frightening ramifications for thousands of parents who have children living with them. Were this a situation where Jeanette Mate *had* maintained her own policy as the law requires and that insurance did not contain a provision providing for underinsurance coverage, the majority's "inadequacy of insurance" analysis would be well taken. However, the issue here is clearly *not* one of "inadequacy of coverage." The trial court clearly erred in granting defendants summary disposition with regard to this issue as well.

IV

NEGLIGENCE—PROFESSIONAL MALPRACTICE

Finally, I also agree that there exists a genuine issue of material fact regarding the existence of a special relationship between Jeanette and the Buiten agency so as to invoke a duty of care. As previously discussed, an insurance agent generally does not have an affirmative duty to advise a client regarding the adequacy of a policy's coverage. But as also noted in *Bruner, supra* at 31-32, a duty may arise where a "special relationship" exists between the insurer or its agent and the insured. If that duty is breached, liability may be imposed on the basis of that breach.

*Bruner*, in my opinion, supports plaintiff's claim of professional negligence against the Buiten agency, but at the very least there exists a question of fact regarding the existence of a "special relationship." In discussing what constitutes a "special relationship," the Court in *Bruner, supra* at 34, stated in pertinent part:

> There must be, in a long-standing relationship, some type of interaction on a question of coverage, with the insured relying on the expertise of the insurance agent to the insured's detriment.

Again, the majority concludes that no special relationship of any sort existed between Shane Mate and the Buiten agency. And, again, the majority, in a rationale that is puzzling, states that "[t]he record lacks any evidence that Buiten advised Shane in any way regarding the adequacy of his insurance coverage." *Ante* at 24. The majority again misses the point: the focus is on the agency's relationship with Jeanette Mate, not with her resident child, Shane. The Buiten agency had a long-term relationship with both Jeanette and James

Mate since 1978, had many, many contacts with them over numerous years, and had interaction with them on coverage questions.

Here, the transcripts unequivocally demonstrate that Jeanette Mate conversed with the Buiten agency and specifically asked whether there was any reason she couldn't be covered under her ex-husband's policy. The Buiten agency's witnesses themselves recalled many conversations with Jeanette Mate, their file notes reflect coverage changes, address changes, notice of divorce, and so forth. Unlike the plaintiff in *Bruner*, Jeanette and James Mate, on the basis of the Buiten agency's own witnesses' testimony, appeared to have had far more dealings with their insurance agency than is usually found in a "standard" client-agent relationship. *Bruner, supra* at 34. Moreover, again unlike the plaintiff in *Bruner*, Jeanette previously had underinsured motorist coverage when she had her separate policy, and so did James Mate in his policy in effect at the time of this accident. Jeanette expressly requested the Buiten agency to provide her with no-fault insurance benefits, apparently just expecting them to be comparable to those that she had when she was married to and living with James Mate and when she had her own separate policy. The Buiten agency sold all these insurance policies to Jeanette and her ex-husband. Because these are factual developments that could well justify the finding of a special relationship between Jeanette and Buiten, the trial court certainly erred in granting defendants summary disposition pursuant to MCR.2.116(C)(10). I would reverse and remand for further proceedings.