# STATE OF MICHIGAN

# COURT OF APPEALS

ARTHUR THOMPSON and SHARON THOMPSON,

        Plaintiffs-Garnishee Plaintiffs-Appellees,

v

FLOYD JUDE LIVING TRUST,

        Defendant,

and

FREMONT INSURANCE COMPANY,

        Garnishee Defendant-Appellant.

UNPUBLISHED
April 10, 2018

No. 337368
Jackson Circuit Court
LC No. 13-003289-NO

Before: GADOLA, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Garnishee defendant, Fremont Insurance Company (Fremont), appeals as of right the trial court's order denying Fremont's motion for summary disposition and granting plaintiffs Arthur and Sharon Thompson's motion for summary disposition pursuant to MCR 2.116(C)(10). We reverse and remand for proceedings consistent with this opinion.

## I. FACTS

This case arises from an injury that occurred at a home owned by defendant Floyd Jude Living Trust (the Trust) in Napoleon, Michigan. In 1977, Floyd Jude and his wife, Rebecca Jude, purchased the home in question. In 1991, Floyd and Rebecca Jude conveyed the home to plaintiffs.[1] On June 23, 2008, plaintiffs conveyed the home by quitclaim deed to the Trust. In July 2008, Floyd Jude was living in the home and purchased a homeowners insurance policy regarding the property from Fremont. The application submitted by Floyd Jude did not identify

---

[1] Plaintiff Arthur Thompson is the stepson of Floyd Jude.

-1-

the property as being owned by the Trust. Fremont issued the policy designating Floyd Jude as the insured.

In 2010, Floyd Jude's son, Floyd Allen Jude, moved into the home to care for his father. Later, Betty Henderson[2] also moved into the home to help care for Floyd Jude. In 2011 or 2012, Floyd Jude entered a nursing home due to his health, and on May 20, 2012, he died. In approximately June 2012, Fremont sent documentation to Floyd Jude regarding the renewal of the homeowners' insurance policy. Henderson, who ultimately was appointed as the personal representative of Floyd Jude's estate, paid the renewal policy premium with a check from Floyd Jude's bank account. The parties do not dispute that at this point, Henderson did not advise Fremont that Floyd Jude had died.

At some point between May 20, 2012 and July 21, 2012, both Floyd Allen Jude and Henderson moved out of the home. On July 21, 2012, Floyd Jude's relatives, including plaintiff Arthur Thompson, gathered at the home to divide Jude's personal property. While checking to ensure that a door was locked, Arthur fell through exterior stairs and was injured.

On November 11, 2012, Fremont learned of the death of Floyd Jude and cancelled the homeowners insurance policy. Fremont refunded one-half the six months' premium payment.

In October 2013, plaintiffs initiated an action against Betty Henderson, as personal representative of the Estate of Floyd Jude, seeking compensation for Arthur's injury. The trial court thereafter granted plaintiffs' motion to amend their complaint to substitute the Trust as defendant, and dismissed Betty Henderson, as personal representative of the Estate of Floyd Jude, as a party.

The parties thereafter settled the lawsuit for $100,000, and the trial court entered a judgment against the Trust for that amount. Plaintiffs then sought to garnish Fremont for the judgment amount. Fremont moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that it was not obligated to pay the settlement amount because the Trust was not an insured under the policy and that the home was not an "insured location" under the policy. Plaintiffs also moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that Fremont had failed to provide a reservation of rights letter to either the Estate, the Trust, or to plaintiffs, and therefore Fremont had waived or was estopped from raising any defenses to coverage.

The trial court granted plaintiffs' motion and denied Fremont's motion. The trial court held that Fremont was precluded from denying coverage by waiver and estoppel because Fremont had renewed the policy without any inquiry as to Floyd Jude's status, Fremont did not return the full overpaid policy premiums, and Fremont did not send a reservation of rights letter to the Estate of Floyd Jude (the Estate). The trial court reformed the insurance policy so that the renewal policy effectively formed a contract between Fremont and the Estate. Fremont now appeals to this Court.

---

[2] Betty Henderson is the stepdaughter of Floyd Jude, and the sister of Arthur Thompson.

## II. DISCUSSION

On appeal, Fremont contends that the trial court erred in granting plaintiffs' motion for summary disposition. We agree.

We review de novo questions of contractual interpretation, *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012), including the proper interpretation and application of insurance policies. *Cohen v Auto Club Ins Ass'n*, 463 Mich 525, 528; 620 NW2d 840 (2001). This Court also reviews issues of equity de novo. *Casey v Auto Owners Ins Co*, 273 Mich App 388, 394; 729 NW2d 277 (2007). We also review de novo the grant or denial of summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). In reviewing the grant or denial of a motion for summary disposition under MCR 2.116(C)(10), this Court reviews the record in the same manner as the trial court, considering the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is appropriately granted when, except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).

An insurance policy is an agreement between its parties. *Tenneco, Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 444; 761 NW2d 846 (2008). Each policy renewal is considered a new contract. See *Russell v State Farm Mut Auto Ins Co*, 47 Mich App 677, 680; 209 NW2d 815 (1973). "The primary goal in the interpretation of an insurance policy is to honor the intent of the parties." *Tenneco, Inc*, 281 Mich App at 444. Our Supreme Court has summarized the principles of insurance policy construction as follows:

> First, an insurance contract must be enforced in accordance with its terms. *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 207; 476 NW2d 392 (1991). A court must not hold an insurance company liable for a risk that it did not assume. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992). Second, a court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise. *Id.* Thus, the terms of a contract must be enforced as written when there is no ambiguity. *Stine v Continental Casualty Co*, 419 Mich 89, 114; 349 NW2d 127 (1984).

> While we construe the contract in favor of the insured if an ambiguity is found, *Auto Club Ins Ass'n v DeLaGarza*, 433 Mich 208, 214; 444 NW2d 803 (1989), this does not mean that the plain meaning of a word or phrase should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefitting an insured. *Upjohn Co, supra* at 208 n 8. The fact that a policy does not define a relevant term does not render the policy ambiguous. *Auto Club Group Ins Co v Marzonie*, 447 Mich 624, 631; 527 NW2d 760 (1994). Rather, reviewing courts must interpret the terms of the contract in accordance with their commonly used meanings. *Group Ins Co of Michigan v Czopek*, 440 Mich 590,

596; 489 NW2d 444 (1992). [*Henderson v State Farm Fire and Cas Co*, 460 Mich 348, 354-355; 596 NW2d 190 (1999).]

To determine whether an insured is entitled to coverage under an insurance policy, a trial court must determine if the policy provides coverage to the insured, and, if so, whether any exclusion negates that coverage. *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 172; 534 NW2d 502 (1995). The insured has the burden of establishing that his or her claim falls within the terms of the insurance policy. *Id.*

In this case, the policy at issue included the following definitions:

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household.

* * *

3. "insured" means you and residents of your household who are:

    a. your relatives; or

    b. other persons under the age of 21 and in the care of any person named above.

* * *

4. "Insured location" means:

    a. the residence premises;

    b. the part of other premises, other structures and grounds used by you as a residence and:

        (1) which is shown in the Declarations; or

        (2) which is acquired by you during the policy period for your use as a residence;

    c. any premises used by you in connection with a premises in 4a or 4b above;

    d. any part of a premises:

        (1) not owned by an insured; and

        (2) where an insured is temporarily residing;

* * *

8. "residence premises" means:

-4-

> a. the one family dwelling, other structures, and grounds; or
>
> b. that part of any other building;
>
> where you reside and which is shown as the "residence premises" in the Declarations.
>
> "Residence premises" also means a two to four family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

The policy also stated as follows regarding the effect of the death of the insured:

> 9. Death. If any person named in the Declarations or the spouse, if a resident of the same household, dies:
>
> > (a) we insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;
> >
> > (b) insured includes:
> >
> > > (1) any member of your household who is an insured at the time of your death, but only while a resident of the residence premises; and
> > >
> > > (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

As noted, the fundamental inquiry in any lawsuit for payment under an insurance policy is whether that insurance policy provides coverage to the insured in question. See *Heniser*, 449 Mich at 172. Here, the parties do not dispute that the policy issued by Fremont in June 2012 named Floyd Jude as the insured, and that Floyd Jude was deceased at the time of the policy renewal. Considering that Jude was deceased, he lacked the ability to enter into a new contract with Fremont in July 2012.

The trial court determined, however, that Fremont was precluded from denying coverage because (1) Fremont renewed the policy without ascertaining whether Floyd Jude was alive, and when Fremont discovered that Floyd Jude was deceased, it returned only half of the policy premium, (2) Fremont failed to send a reservation of rights letter to the personal representative of the Estate, (3) Fremont thereby waived any rights and is estopped from asserting any rights, and (4) the contract was thus reformed as a contract between Fremont and the Estate as of June 2012.

Fremont first argues that the trial court erred by determining that it was obligated to ascertain whether Floyd Jude was still alive at the time the policy was renewed in June 2012. We agree. In Michigan, an insurer has no duty to investigate or to verify the representations made by a potential insured. *Titan Ins Co*, 491 Mich at 570. To require an insurer to affirmatively investigate the veracity of representations made to it by potential insureds would be

to hold an insurer to a different and higher standard than that of other contracting parties. *Id*. at 571. In this case, when Henderson renewed the policy by writing a check from Floyd Jude's bank account and did not advise Fremont that the insured was deceased, Fremont was not obligated to inquire regarding whether Floyd Jude was still living. We also decline to impute knowledge to an insurer not supported by the record. See *McGrath v Allstate Ins Co*, 290 Mich App 434, 448; 802 NW2d 619 (2010), in which this Court declined to impute to the insurer the knowledge that the insured was no longer living at the residence even though the daughter of the insured notified the insurer that the bills should be sent to a new address.

Fremont next argues that the trial court erred in determining that because Fremont failed to send a reservation of rights letter to the personal representative of the Estate, waiver and estoppel precluded Fremont from asserting any defenses to coverage. We agree. Generally, when an insurer denies coverage to its insured and states its defenses, it then has waived or is estopped from asserting new defenses. *Kirschner v Process Design Assoc, Inc*, 459 Mich 587, 593; 592 NW2d 707 (1999). When an insurer undertakes the defense of its insured, it must give reasonable notice to its insured if it is doing so under a reservation of rights, and failure to notify the insured waives or serves to estop the insurer from asserting those rights in the future. *Id*., citing *Meirthew v Last*, 376 Mich 33, 39; 135 NW2d 353 (1965).

However, "[t]he application of waiver and estoppel is limited, and, usually, the doctrines will not be applied to broaden the coverage of a policy to protect the insured against risks that were not included in the policy or that were expressly excluded from the policy." *Kirschner*, 459 Mich at 593-594. Equitable estoppel does not operate "to bring into existence a contract not made by the parties, [or] to create a liability contrary to the express provisions of the contract the parties did make." *Ruddock v Detroit Life Ins Co*, 209 Mich 638, 653; 177 NW 242 (1920).

In this case, any duty owed by Fremont was to its insured.[3] Because the insured named in the policy, Floyd Jude, was deceased at the time the policy was renewed, the contract was not valid. Fremont did not contract with either the Estate or the Trust, and we will not use the doctrine of equitable estoppel to create liability for which the parties did not contract, as the record contains nothing to support policy coverage to either the Estate or the Trust. *Ruddock*, 209 Mich at 654.

---

[3] We note that Fremont initially defended the Estate, apparently without sending a reservation of rights letter, and was successful in having the Estate dismissed from the action. Plaintiffs thereafter amended their lawsuit to name the Trust as defendant instead of the Estate. Fremont did not undertake to defend the Trust. Any obligation owed by Fremont, however, is to its insured, Floyd Jude, and not some other entity. Similarly, while an insurance company seeking rescission of a contract must generally return the paid premiums or seek a declaration of rights in the trial court while retaining the premiums, see *Burton v Wolverine Mut Ins Co*, 213 Mich App 514, 520; 540 NW2d 480 (1995), Fremont's alleged retention of a portion of the policy premiums and failure to seek a declaration of rights would affect only its obligation to an insured.

Fremont next argues that the trial court erred by reforming the policy to make the Estate the insured. Again, we agree. Where a contract does not express the intent of the contracting parties, "[a] court of equity has power to reform the contract to make it conform to the agreement actually made." *Casey*, 273 Mich App at 398 (quotation marks and citation omitted). A party seeking reformation of a contract must demonstrate by clear and convincing evidence that a mutual mistake of fact or a mistake by one party and fraud by the other caused a failure of the instrument to reflect the true intent of the parties. *Id*. A mutual mistake of law does not support a claim for reformation. *Id*. Moreover, third parties generally lack standing to seek reformation of a contract. *Mate v Wolverine Mut Ins Co*, 233 Mich App 14, 24; 592 NW2d 379 (1999).

In this case, the reformation was improperly granted. As a third party, the Trust was not entitled to reformation of a contract. See *id*. Moreover, in this case there was no evidence of a mutual mistake of fact or a mistake by one party and fraud by the other. See *Casey*, 273 Mich App at 398. To the extent that Henderson mistakenly believed that she could renew the policy by paying the policy premium, this was not a *mutual* mistake, as Fremont's mistake was in believing Jude was still alive and that it was issuing a renewal policy to Jude. Reformation was also inappropriate on the grounds of fraud because the record does not indicate that Fremont engaged in fraudulent activity toward Jude, the Trust, or the Estate. Accordingly, the trial court erred when it reformed the policy.

We therefore reject the conclusion that the renewal between Fremont and the deceased Floyd Jude formed a contract between Fremont and another entity, such as the Estate.[4] The renewal policy named only Jude as the named insured, and there is no evidence that Fremont contracted with another party. Concluding otherwise would allow any person who paid to renew a deceased person's insurance policy to claim that the policy was transferred to some other entity upon payment. We decline to interpret an insurance policy to produce absurd or unreasonable conditions or results. *Hastings Mut Ins v Safety King Inc*, 286 Mich App 287, 297; 778 NW2d 275 (2009).

The Trust was not an insured under a policy issued by Fremont. Fremont therefore was not obligated to provide coverage to the Trust for plaintiffs' judgment and Fremont was entitled to summary disposition of plaintiffs' claims.[5]

---

[4] We also note that even if there had been a contract between Fremont and the Estate, that would not impute liability by Fremont to the Trust.

[5] Having concluded that Fremont is entitled to summary disposition on this ground, we decline to reach Fremont's additional contention that the trial court erred in granting plaintiffs summary disposition because under the policy the premises in question was not an "insured location."

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan