FARM BUREAU INSURANCE COMPANY v ALLSTATE INSURANCE
COMPANY

Docket No. 199615. Submitted March 10, 1998, at Grand Rapids. Decided
December 4, 1998, at 9:00 A.M.

Farm Bureau Insurance Company brought an action in the Cass Circuit Court against Allstate Insurance Company, seeking a declaration regarding which of the two automobile insurers is primarily responsible for personal protection insurance benefits for Treneil Boothe under the priority scheme of the no-fault act, MCL 500.3114; MSA 24.13114. Boothe sustained accidental bodily injury in Michigan while occupying an automobile insured by Farm Bureau. At the time of the accident, Boothe resided in Michigan with his mother, Toni Boothe, who was insured under an automobile insurance policy issued by Allstate in, and complying with the laws of, Indiana. The court, Michael E. Dodge, J., on cross-motions for summary disposition, granted summary disposition for Farm Bureau. Allstate appealed.

The Court of Appeals *held*:

1. The trial court did not clearly err in determining that the Boothes were residents of Michigan.

2. Under MCL 500.3163; MSA 24.13163, an insurer authorized to issue automobile insurance policies in Michigan must file and maintain a written certification that any accidental bodily injury occurring in Michigan arising from the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle by an out-of-state resident who is insured by the insurer shall be subject to the personal protection insurance provisions of the no-fault act. Because the injured person in this case was not an out-of-state resident, the trial court erred in applying § 3163 when imposing primary liability for personal protection insurance benefits on Allstate under its Indiana policy.

3. Under MCL 500.3012; MSA 24.13012, an automobile liability policy issued in violation of MCL 500.3004-500.3012; MSA 24.13004-24.13012 may be deemed to be valid and to include the provisions required by those sections if the policy is purported by its issuer to be a policy that complies with the requirements of the no-fault act. Here, § 3012 does not apply because Allstate did not purport its

Indiana policy to be one that complied with the requirements of Michigan's no- fault act.

Reversed and remanded for entry of order of summary disposition for Allstate.

GRIFFIN J., dissenting, stated that because Toni Boothe was a Michigan resident, her vehicle had to be registered, MCL 257.216(a); MSA 9.1916(a), and insured, MCL 500.3101(1); MSA 24.13101(1), in compliance with Michigan law, and that Allstate's Indiana policy violates the Insurance Code and must be reformed pursuant to MCL 500.3012; MSA 24.13012 to comply with Michigan no-fault law, under which Allstate is first in priority of liability for the benefits in dispute in this case, MCL 500.3114(1); MSA 28.13114(1). The order of summary disposition in favor of Farm Bureau should be affirmed.

INSURANCE — NO-FAULT — POLICIES ISSUED IN VIOLATION OF NO-FAULT ACT — VALIDITY.

An automobile liability policy issued in violation of §§ 3004 through 3012 of the no-fault act may be deemed to be valid and to include the provisions required by those sections only if the policy is purported by its issuer to be a policy that complies with the requirements of the no-fault act (MCL 500.3004-500.3012; MSA 14.13004-24.13012).

*Willingham & Coté, P.C.* (by *James L. Dalton* and *Curtis R. Hadley*), for the plaintiff.

*Straub, Seaman & Allen, P.C.* (by *Douglas C. Allen*), for the defendant.

Before: MARKEY, P.J., and GRIFFIN and WHITBECK, JJ.

MARKEY, P.J. In this declaratory judgment action, Allstate appeals as of right from a determination that it is required to pay no-fault personal protection insurance (PIP) benefits to a person who was a Michigan resident at the time of the pertinent automobile accident under an automobile insurance policy issued in another state that does not require the maintenance of no-fault insurance. We reverse and remand.

The trial court did not clearly err in determining that Allstate's insured was a resident of Michigan who was domiciled with the accident victim, also a Michigan resident, and that the accident victim was a resident relative of Allstate's insured, MCL 500.3114; MSA 24.13114, in light of the following facts: that she spent a significant amount of time at the Cass County, Michigan, Chain Lakes Road residence, that she frequently slept at this residence, that she received public assistance from the state of Michigan and that the public assistance checks were mailed to the Chain Lakes Road residence, the infrequency of Allstate's insured's stays with relatives in Elkhart, Indiana, and the fact that her children's school had the telephone number of the Chain Lakes Road residence as a number to use to contact Allstate's insured in the case of an emergency. MCR 2.613(C); *Arco Industries Corp v American Motorists Ins Co*, 448 Mich 395, 410; 531 NW2d 168 (1995); *Witt v American Family Mut Ins Co*, 219 Mich App 602, 605-606; 557 NW2d 163 (1996).

However, because Allstate's insured was a resident of Michigan domiciled in this state, she was not a nonresident for purposes of the no-fault act. *Wilson v League General Ins Co*, 195 Mich App 705, 709-710; 491 NW2d 642 (1992). Accordingly, because Allstate's insured was not a nonresident within the meaning of the no-fault act, MCL 500.3163; MSA 24.13163 has no application on the facts of this case and may not be used to impose responsibility for payment of PIP benefits on Allstate. Further, Allstate's insured did not own or operate any of the motor vehicles involved in the pertinent accident. Thus, on that basis as well, under the plain language of MCL 500.3163; MSA

24.13163, Allstate had no obligation to provide coverage based on its Indiana policy with its insured.

We further note that, while Allstate's insured was a Michigan resident,[1] we find no reasonable basis in the record to conclude that Allstate violated Michigan law in issuing an Indiana insurance policy to her because there is no evidence from which one may reasonably determine that Allstate should have known that she was a Michigan resident. We recognize that MCL 500.3012; MSA 24.13012 provides:

> Such a liability insurance policy issued in violation of sections 3004 through 3012 [MCL 500.3004; MSA 24.13004 to MCL 500.3012; MSA 24.13012] shall, nevertheless, be held valid but be deemed to include the provisions required by such sections, and when any provision in such policy or rider is in conflict with the provisions required to be contained by such sections, the rights, duties and obligations of the insured, the policyholder and the injured person shall be governed by the provisions of such sections: Provided, however, That the insurer shall have all the defenses in any action brought under the provisions of such sections that it originally had against its insured under the terms of the policy providing the policy is not in conflict with the provisions of such sections.

In our view, it is evident that the basic purpose of § 3012 is to treat an insurance policy that an insurer issues *purporting to be a Michigan policy that complies with Michigan law* as such even if the written terms of the policy are inconsistent with Michigan law. See, e.g., *Adrian School Dist v Michigan Public School Employees Retirement System*, 458 Mich 326, 332; 582 NW2d 767 (1998) (primary goal of statutory

---

[1] This is a finding by the trial court that is not clearly erroneous and that we must respect.

construction "is to ascertain and give effect to the intent of the Legislature"). Simply put, the Indiana insurance policy issued by Allstate in this case was not issued "in violation of" the no-fault act because Allstate neither purported to issue a policy that complied with Michigan's no-fault act nor knew that it was dealing with a Michigan resident.

Indeed, the Michigan Supreme Court in one of the cases relied on by the dissent was referring to a policy issued by a company that purported the policy provided statutorily required no-fault insurance:

> It would be unconscionable to permit an insurance company *offering statutorily required coverage* to collect premiums for it with one hand and allow it to take the coverage away with the other by using a self-devised "other insurance" limitation. Nothing could more clearly defeat the intention of the Legislature. [*Blakeslee v Farm Bureau Mut Ins Co of Michigan*, 388 Mich 464, 474; 201 NW2d 786 (1972) (emphasis added).]

Further down on the same page of the *Blakeslee* opinion, the Court stated, as quoted by the dissent:

> Given this clear purpose and the mandatory language of the statute, such language must be read into those provisions of a policy of insurance that differ or vary from the statutory language. [*Id.*]

In our view, the portion of *Blakeslee* cited by the dissent stands for the basic principle that an insurer purporting to provide a Michigan no-fault automobile insurance policy may not include provisions that reduce the benefits an insured may obtain below the amount to which the insured would be entitled under the no-fault act. We cannot construe *Blakeslee* as requiring an insurance policy issued in good faith by

an insurer outside this state to a person who provides no indication to the insurer of being a Michigan resident as if it were a Michigan no-fault insurance policy.

It is common knowledge that Michigan "no-fault" automobile insurance policies are generally more expensive than automobile insurance policies from states such as Indiana that do not have "no-fault" laws. To generally hold that such an out-of-state policy entered into by a Michigan resident would be treated as if it were a Michigan "no-fault" policy might well assist some unscrupulous Michigan residents to obtain a Michigan no-fault policy at the lower rate of an out-of-state policy. We will not construe § 3012 in such a manner and, thus, we conclude that it has no application to the Indiana insurance policy that Allstate issued to its insured in this case. See, e.g., *McAuley v General Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998) ("[s]tatutes should be construed so as to prevent absurd results, injustice, or prejudice to the public interest").[2]

From the record developed below, it is evident that Allstate's insured presented herself to an insurance agent who worked in some manner with Allstate in Indiana and obtained an Indiana automobile insurance policy. From all indications, Allstate's insured only used an Indiana address in connection with the transaction. Thus, Allstate could not reasonably have been expected to have known when the policy was issued that its insured was actually a Michigan resident. The dissent would effectively require an insurer,

---

[2] We emphasize that a case in which an insurer is aware that it is dealing with a Michigan resident and nevertheless issues an out-of-state automobile insurance policy that does not comply with Michigan's no-fault act would be a far different circumstance.

at least one that does business both in Michigan and in other states, to routinely investigate every person who seeks automobile insurance outside Michigan while using a non-Michigan address to determine whether that person is a Michigan resident. Such an investigation would be required for the insurer to avoid being treated as if it had issued a Michigan no-fault policy in the event that the insured turns out to have been a Michigan resident when the policy was issued. We do not believe that a reasonable construction of the plain language of the no-fault act and pertinent case authority supports imposing such an onerous burden on insurers.

Reversed and remanded for entry of an order granting summary disposition in favor of Allstate. We do not retain jurisdiction.

WHITBECK, J., concurred.

GRIFFIN, J. (*dissenting*). On the basis of the stipulated set of facts, it appears that because of a mutual mistake,[1] Michigan resident[2] Toni Boothe and Michi-

---

[1] Both parties moved for summary disposition pursuant to MCR 2.116(C)(10). The stipulated facts contain no indication of fraud or misrepresentation by Toni Boothe. Were fraud or material misrepresentation proved, our disposition would likely be different.

The majority implies that Toni Boothe may have had an economic motive in securing the Indiana Allstate automobile insurance policy. There is no record evidence to support such conjecture. Further, I note that "[t]he no-fault insurance act was intended to provide prompt monetary relief for losses sustained in vehicular accidents *at the lowest cost to the system and the individual.*" *Walker v Farmers Ins Exchange*, 226 Mich App 75, 78; 572 NW2d 17 (1997) (emphasis added). Cost-savings was one of the reasons the Michigan insurance industry supported the enactment of the no-fault automobile insurance statute. See, generally, *Shavers v Attorney General*, 402 Mich 554; 267 NW2d 72 (1978).

[2] Throughout this opinion I use the terms "resident" and "domicile" synonymously.

gan authorized insurer defendant Allstate Insurance Company entered into an illegal contract for automobile insurance. The majority upholds the validity of the insurance contract despite its illegality. I respectfully dissent.

I

On April 16, 1994, fifteen-year-old Treneil Boothe sustained significant chest and head injuries as a result of a motor vehicle accident that occurred in Cass County, Michigan. Treneil Boothe is the son of Allstate insured Toni Boothe. Plaintiff Farm Bureau Insurance Company is the insurer of the owner of the automobile that was occupied by Treneil Boothe at the time of the accident.

This is a declaratory judgment action to determine priority between plaintiff and defendant for the payment of Michigan personal protection insurance benefits (PIP) owed Treneil Boothe arising out of the accident. Under the no-fault priority scheme, MCL 500.3114(1); MSA 24.13114(1), defendant Allstate is primarily responsible for the no-fault benefits if (1) Treneil Boothe and his mother were Michigan residents domiciled in the same household at the time of the accident and (2) Toni Boothe's Allstate automobile insurance policy afforded Michigan's personal protection insurance. The lower court ruled in favor of plaintiff with regard to the first issue, holding that Toni Boothe was a Michigan resident[3] and that Treneil

---

[3] The stipulated set of facts contain the following relevant information regarding the domicile of Toni Boothe:

Toni Boothe had several addresses at which she has spent time other than the Chain Lakes Road [Michigan] address in the last two years. Her driver's license shows an address of 401 State Street,

Boothe resided in the Michigan household of his mother. The majority and I agree that the lower court did not err in this ruling. However, the majority

---

Apt. 1, Elkhart, Indiana. She would also occasionally stay with her sister and her family at 637 James Street, Elkhart, Indiana. Ms. Boothe used that address as her Indiana vehicle registration address and the address she used for her automobile insurance with Allstate.

At her sister's address in Elkhart, Toni Boothe received mail, had clothes at that location and had a place to stay in the basement with a bed. She also gave her sister money, whatever she could, in the way of "rent" to stay there.

Toni testified that she also occasionally stayed with her son Walter in Elkhart. Toni Boothe also spent time at the Chain Lakes Road address in Cassopolis, Michigan. She estimated that in the 3½ months of 1994 prior to the automobile accident, she spent probably most of the time, half the time or more, at the Chain Lakes Road address. She maintained custody of her three children who resided at the Chain Lakes Road address and went to school in Cassopolis. The school had emergency phone numbers where Ms. Boothe could be reached, that included the Chain Lakes Road address and the telephone number at Mr. Williams' home. Toni Boothe received public assistance checks for Aid to Families with Dependent Children through the State of Michigan, and those checks were mailed to the Chain Lakes Road address. Toni Boothe had registered to vote in the State of Michigan in the 1980's, although she could not remember when she had last voted. She also paid Mr. Williams money for the bills in exchange for living at the Chain Lakes Road address. She kept clothes at the Chain Lakes Road address and had a place to sleep in the front room on the other couch. She also acknowledged that she was "staying" at the Chain Lakes Road address in Cassopolis. She also testified that on the day she found out about Treneil's accident, April 16, 1994, she was sleeping on the couch at the Chain Lakes Road address. She explained that she was "staying there temporarily until I found a place."

Treneil was under the distinct impression that his mother was living with him, his sisters and father. When asked how often Toni Boothe stayed at the Chain Lakes Road address, Treneil testified "like everyday." [Transcript citations deleted.]

Although the issue is close, I conclude that the *Workman v DAIIE*, 404 Mich 477; 274 NW2d 373 (1979), factors predominate in favor of finding Toni Boothe to be a Michigan resident at the time of both contracting and the accident.

reverses on the basis that the Allstate automobile insurance policy did not provide security for compulsory Michigan no-fault insurance protection.

I agree with the majority that MCL 500.3163(1); MSA 24.13163(1)[4] is not directly applicable in light of the finding that Toni Boothe was a Michigan resident and therefore not "an out-of-state resident." However, I would affirm on the basis of a rationale different than the one used by the lower court. It is well settled that "[w]here a trial court reaches the correct result for the wrong reason, its decision need not be reversed on appeal." *In re People v Jory,* 443 Mich 403, 425; 505 NW2d 228 (1993). See also *Porter v Royal Oak,* 214 Mich App 478, 488; 542 NW2d 905 (1995). Here, the lower court reached the right result.

II

The majority reaches an incongruous result by concluding that an automobile insurance policy issued to an out-of-state resident must be reformed to comply with Michigan law (MCL 500.3163[1]; MSA 24.13163[1]) while a policy issued to a Michigan resident need not. Overlooked or ignored is the Legisla-

---

[4] MCL 500.3163(1); MSA 24.13163(1) provides:

An insurer authorized to transact automobile liability insurance and personal and property protection insurance in this state shall file and maintain a written certification that any accidental bodily injury or property damage occurring in this state arising from the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle by an out-of-state resident who is insured under its automobile liability insurance policies, shall be subject to the personal and property protection insurance system set forth in this act.

There is no dispute that defendant Allstate is a Michigan-authorized insurer that has filed and maintained a written certification regarding its out-of-state insureds.

ture's intent and goal of providing a system of compulsory no-fault insurance for all Michigan motorists. *Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978). Under the present circumstances, I would hold that the public policy of the state of Michigan, as reflected by our Insurance Code and our case law, compels that the Boothe insurance policy be reformed to comply with Michigan law.[5]

Subsection 3101(1) of the no-fault act, MCL 500.3101(1); MSA 24.13101(1), provides in pertinent part:

> The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance.

Subsection 216(a) of the Michigan Vehicle Code, MCL 257.216(a); MSA 9.1916(a), exempts "nonresidents" from the Michigan registration requirement. "Nonresident" is straightforwardly defined by MCL 257.34; MSA 9.1834 as "every person who is not a resident of this state."

In the context of required liability insurance, the Insurance Code provides:

> *Such a liability insurance policy issued in violation* of sections 3004 through 3012 *shall, nevertheless, be held valid but be deemed to include the provisions required by such sections,* and when any provision in such policy or rider is in conflict with the provisions required to be contained by such sections, the rights, duties and obligations of the

---

[5] With regard to this issue, the present case is distinguishable from *Mate v Wolverine Mut Ins Co*, 233 Mich App 14; 592 NW2d 379 (1998). In *Mate,* the coverage, which was disputed, was optional, contractually based underinsured motorist protection, not compulsory insurance.

insured, the policyholder and the injured person shall be governed by the provisions of such sections: Provided, however, That the insurer shall have all the defenses in any action brought under the provisions of such sections that it originally had against its insured under the terms of the policy providing the policy is not in conflict with the provisions of such sections. [MCL 500.3012; MSA 24.13012 (emphasis added).]

Here, Toni Boothe was a Michigan resident. Because her vehicle was required to be registered in Michigan, her insurance must conform to the minimum requirements of the Michigan Insurance Code. Otherwise, the insurance contract violates public policy and subjects Toni Boothe to misdemeanor criminal liability. MCL 500.3102; MSA 24.13102.

In *Blakeslee v Farm Bureau Mut Ins Co of Michigan*, 388 Mich 464, 474; 201 NW2d 786 (1972), our Supreme Court addressed the now repealed uninsured motorist statutory provision and held that when the language of an automobile insurance contract is at odds with a statutory mandate, the automobile insurance contract must be reformed to comply with our law:

> Given this clear purpose and the mandatory language of the statute, such language must be read into those provisions of a policy of insurance that differ or vary from the statutory language.

Following the repeal of compulsory uninsured motorist protection, the Supreme Court reiterated that in regard to statutorily mandated coverages, Michigan automobile insurance policies must be construed to satisfy the minimum statutory requirements. As the Supreme Court stated in *Rohlman v Hawkeye-*

*Security Ins Co*, 442 Mich 520, 524-525; 502 NW2d 310 (1993), and the footnote contained therein:

> PIP benefits are mandated by statute under the no-fault act, MCL 500.3105; MSA 24.13105, and, therefore, the statute is the "rule book" for deciding the issues involved in questions regarding awarding those benefits.[3] On the other hand, the insurance policy itself, which is the contract between the insurer and the insured, controls the interpretation of its own provisions providing benefits not required by statute. Therefore, because uninsured motorist benefits are not required by statute, interpretation of the policy dictates under what circumstances those benefits will be awarded.

---

[3] "The policy and the statutes relating thereto must be read and construed together as though the statutes were a part of the contract, for it is to be presumed that the parties contracted with the intention of executing a policy satisfying the statutory requirements, and intended to make the contract to carry out its purpose.

"A policy of insurance must be construed to satisfy the provisions of the law by which it was required, particularly when the policy specifies that it was issued to conform to the statutory requirements; and where an insurance policy has been issued in pursuance of the requirement of a statute which forbids the operation of a motor vehicle until good and sufficient security has been given, the court should construe this statute and the policy together in the light of the legislative purpose." [12A Couch, Insurance, 2d (rev ed), § 45:694, pp 331-332.]

"The definition[s] in an automobile liability insurance policy required by statute, of the motor vehicles covered by it, [are] to be construed with reference to statutes with which it was intended to comply . . . . [*Id.*, § 45:695, p 333.]"

---

Recently, in both *State Farm Mut Automobile Ins Co v Enterprise Leasing Co*, 452 Mich 25; 549 NW2d 345 (1996), and *Citizens Ins Co v Federated Mut Ins*

*Co*, 448 Mich 225; 531 NW2d 138 (1995), the Supreme Court held that provisions of automobile insurance policies that violate the Insurance Code are void and that such contracts must be reformed to comply with compulsory insurance requirements.

In the present case, I would follow these authorities and hold that the automobile insurance policy issued by defendant to Michigan resident Toni Boothe must be reformed to comply with the compulsory Michigan no-fault automobile insurance law. After doing so, it is clear that defendant Allstate is first in priority for the benefits at issue because the injured party was a relative domiciled in the same household of the named insured. MCL 500.3114(1); MSA 28.13114(1).

For these reasons, I respectfully dissent. I would affirm.