# STATE OF MICHIGAN

# COURT OF APPEALS

---

AUTO-OWNERS INSURANCE COMPANY,

      Plaintiff-Appellee,

v

INTEGON NATIONAL INSURANCE
COMPANY,

      Defendant-Appellant.

UNPUBLISHED
September 17, 2015

No. 321396
Ingham Circuit Court
LC No. 12-001203-CK

---

Before: BORRELLO, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

In this case involving which insurer is the highest-priority no-fault provider, defendant Integon National Insurance Company (Integon) appeals by right an April 21, 2014, judgment in favor of plaintiff Auto-Owners Insurance Company against Integon. The judgment followed a March 31, 2014, opinion and order wherein the trial court granted Auto-Owners' motion for summary disposition pursuant to MCR 2.116(C)(10). For the reasons set forth in this opinion, we reverse the trial court's judgment and remand for entry of judgment in favor of Integon.

## I. FACTUAL BACKGROUND

In February 2009, Laura Dunn and Terry Dunn, her husband at the time, moved from Michigan to North Carolina. On April 9, 2009, Laura filled out an application for a North Carolina automobile insurance policy at the Wagoner Insurance Agency (Wagoner Agency), an independent insurance agency that wrote insurance for multiple companies including Integon. Laura sought coverage for a 2006 Toyota Solara and a 1996 GMC Jimmy. At the time that Laura applied for coverage, both she and her husband had Michigan drivers' licenses, and the Toyota was registered in Michigan, but Laura and Terry provided a residential address in Sneads Ferry, North Carolina, and represented that the vehicles would be garaged at the North Carolina address.

Ultimately, Integon issued a North Carolina auto insurance policy for both vehicles. The policy listed Laura as the "named insured" and Terry was listed as an additional driver. The policy listed Michigan Credit Union as a "loss payee" for the Toyota and listed Michigan resident, Jean Tremblay, as having an "additional interest," in the vehicle. Tremblay was Laura's ex-husband at the time the policy was issued and because of Laura's bad credit the

-1-

Toyota was titled in his name despite Laura being awarded the vehicle in the divorce. The policy was setup to renew automatically every six months upon payment of a renewal premium.

On April 29, 2010, Laura requested that the Wagoner Agency change her address from the Sneads Ferry residence to a residence in N. Topsail Beach, North Carolina. Tracy Iovanna, a personal friend of Laura's and a licensed insurance agent who worked for the Wagoner Agency at the time, testified that the garaging location of the vehicles was critical in determining whether to issue a North Carolina policy. Iovanna handled some of the transactions related to Laura's policy.

From February 2009 through August 2011, Laura and Terry lived in North Carolina. In September 2011, Laura and Terry moved back to Whitmore Lake, Michigan and lived with Terry's parents, Doyal and Ella Dunn. Doyal and Ella had a Michigan no-fault insurance policy issued by Auto-Owners. Laura and Terry's Integon policy expired on October 9, 2011 due to their non-payment of the renewal premium; however, the policy was renewed on October 23, 2011, after Laura and Terry submitted a late renewal payment to the Wagoner Agency.

On November 19, 2011, Laura and Terry were involved in a motor vehicle accident in Brighton, Michigan while Laura was driving the Toyota. Terry suffered catastrophic injuries. Neither party disputes that both the Integon and the Auto-Owners policies were in effect at the time of the accident.

Following the accident, Integon refused to pay PIP benefits to Terry because it maintained that the North Carolina policy did not provide PIP benefits and Integon was not required to comply with the Michigan no-fault act because it had no knowledge that Laura and Terry relocated to Michigan. Auto-Owners then paid PIP benefits to Terry under his parent's policy because he was a family member of the insureds.

On December 4, 2012, Auto-Owners commenced this declaratory action, alleging that Integon knew or had reason to know that Laura and Terry were moving to Michigan, but nonetheless renewed their North Carolina policy and that, as a result, Integon was required to reimburse Auto-Owners for the PIP benefits that it paid to Terry under MCL 300.3012.

During discovery, Iovanna testified at a deposition that, in addition to knowing Laura through her capacity as an insurance agent at the Wagoner Agency, she had a "side relationship," with Laura. Iovanna testified that she learned that Laura and Terry were considering returning to Michigan as follows:

> *Q.* Did it ever come to the attention of Wagoner or to you individually that the Dunns, either Mr. or Mrs., had moved away from North Carolina?
>
> *A. I knew because I had a personal or side relationship with Laura.* I knew that she was going to try to look for a job, just in talking to her. She had taken some leave from where she worked and she was going to go see if she could find a job.
>
> *Q.* When was that? Do you recall?

*A*. I'm going to try not to get emotional, but my husband had passed away the same week she -- that she stopped by my house. And -- I'm sorry

\* \* \*

*A*. [] [H]e passed away unexpectedly on September 7th, and I think she came by that night to tell me that she had heard. I had a houseful of people. And she said that -- I think that Terry had to find a job. He might have already been gone ahead of her.

But she was going to Michigan -- she didn't know what was going to happen -- to see if she could find a job. But I don't think she had moved -- you know, I'm pretty sure that she hadn't moved or anything. She was going to go look for a job.

\* \* \*

*Q*. I understand. But your recollection is that Mr. Dunn had already gone back to Michigan to look for work or had already gone ahead of her; is that ---

*A*. [] That's what I think. [Emphasis added.]

Iovanna also testified that "I did go out to the bank, and I think I seen her there. She was still at the bank and still trying to get her stuff together to go look for a job . . . [in] Michigan."

In addition, Iovanna and Sharon Dowell, an employee of Integon, each submitted affidavits attesting that Integon sent numerous "coupons" to Laura and Terry at their North Carolina address that requested renewal payments and provided a space to inform Integon if they had changed addresses. The coupons were submitted as exhibits to the affidavits. Dowell testified at a deposition that she had no information as to whether Laura or Terry had established residency outside of North Carolina. Dowell also testified that when the policy was renewed on October 17, 2011, Laura and Terry did not make any indication regarding a changed address. Dowell testified that in December 2011, after the accident, Laura canceled the policy because of a move to Michigan.

Auto-Owners moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that Integon's North Carolina policy provided Michigan no-fault coverage, in part, because Integon's agent, Iovanna, had knowledge that Laura and Terry were relocating to Michigan. Auto-Owners also argued that Integon was the first-priority insurer because Terry was a named insured on the Integon policy. Integon filed a counter-motion for summary disposition arguing that Iovanna's knowledge should not be imputed to Integon and that there were no facts to show that it knew or should have known that Laura and Terry relocated to Michigan.

The trial court granted summary disposition in favor of Auto-Owners, reasoning that Integon should have known that Laura and Terry were taking up residency in Michigan. The court explained:

Here, Integon should have known that Laura and Terry Dunn were taking up residency in Michigan during the renewal period. Laura Dunn personally informed Iovanna that she and Terry Dunn were going to Michigan for an indefinite period of time to seek employment. This Court finds that seeking employment, in addition to the knowledge that Laura and Terry Dunn were licensed to drive in Michigan and had connections to Michigan, is sufficient to establish that Integon should have known that Laura and Terry Dunn were taking up residency in Michigan during the renewal period beginning on October 9, 2011.

The trial court also rejected Integon's argument that Iovanna's knowledge should not be imputed to Integon because, under Michigan law, "an independent insurance agent is an agent of the insured and not the insurer." Instead, the trial court agreed with Auto-Owners' argument that North Carolina agency law applied, and that under North Carolina law, NC Gen Stat § 58-33-20, an independent insurance agent is an agent of the insurer not the insured. The court reasoned as follows:

> Both the Dunns and Integon would have expected North Carolina law to be applicable based on the fact that the contract was negotiated and executed in North Carolina. The interests of North Carolina also outweigh those of Michigan because North Carolina has a greater interest in seeing its agency laws applied where the agency relationship and interactions with the Dunns occurred in North Carolina.

Finally, for purposes of first-priority, the trial court concluded that Terry was a named insured under the Integon policy reasoning that Terry "falls within the definition of 'you,' thereby making him a party to the contract for insurance." As a named insured under the Integon policy, the trial court concluded that Integon was the first-priority insurer for Terry under MCL 500.3114. The trial court entered a judgment in favor of Auto-Owners on April 21, 2014. This appeal ensured.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Id*. at 120. "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

## III. ANALYSIS

Integon argues that Terry does not have a statutory or contractual right to claim no-fault benefits under the North Carolina policy because Integon was not aware of Terry's move to Michigan, and thus, it did not purport to provide insurance coverage to Michigan residents. The trial court held that Integon was required to pay no-fault benefits under MCL 500.3012, which provides in relevant part as follows:

> Such a liability insurance policy issued in violation of sections 3004 through 3012 [of the no-fault act] shall, nevertheless, be held valid but be deemed to include the provisions required by such sections, and when any provision in such policy or rider is in conflict with the provisions required to be contained by such sections, the rights, duties and obligations of the insured, the policyholder and the injured person shall be governed by the provisions of such sections.

In *Farm Bureau Ins Co v Allstate Ins Co*, 233 Mich App 38, 41; 592 NW2d 395 (1998) this Court explained that, "it is evident that the basic purpose of [MCL 500.3012] is to treat an insurance policy that an insurer issues *purporting to be a Michigan policy that complies with Michigan law* as such even if the written terms of the policy are inconsistent with Michigan law" (emphasis in original). However, an out-of-state insurer is not required to provide Michigan no-fault coverage if the policy is issued to a person "who provides no indication to the insurer of being a Michigan resident." *Id.* at 42-43. If the out-of-state insurer does not know and has no reason to know it is dealing with a Michigan resident, its policy will not be construed to contain the missing provisions of the no-fault act. See *id.* at 41-44.

In *Farm Bureau*, Allstate issued an Indiana automobile insurance policy to a person who used an Indiana address, although she was a domiciliary of Michigan. *Id*. at 40. This Court held that Allstate was not required to provide no-fault benefits under the policy pursuant to MCL 500.3012 because "Allstate could not reasonably have been expected to have known when the policy was issued that its insured was actually a Michigan residence." *Id*. at 43. The court noted that the insured used an Indiana address in connection with the transaction and there was no other evidence "from which one may reasonably determine that Allstate should have known that she was a Michigan resident." *Id*. at 41.

In this case, the trial court concluded that Integon knew that Laura and Terry relocated to Michigan because it imputed the knowledge that its agent Iovanna had about the relocation. This amounted to legal error. First, to determine that Iovanna knew about the relocation based on her deposition testimony, which was somewhat ambiguous, required the trial court to weigh credibility and make factual determinations, which is inappropriate at the summary disposition stage. See *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994) (a trial court may not make factual findings or weigh credibility in deciding a motion for summary disposition). Second, irrespective of whether Iovanna knew that Laura and Terry relocated to Michigan, because Iovanna did not acquire that knowledge while acting within the scope of her agency relationship with Integon, her knowledge could not be imputed to Integon. Specifically, this Court has explained the doctrine of imputed knowledge as follows:

> The doctrine of imputed knowledge generally provides:

When a person representing a corporation is doing a thing *which is in connection with and pertinent to that part of the corporation business which he is employed, or authorized or selected to do*, then that which is learned or done by that person pursuant thereto is in the knowledge of the corporation. The knowledge possessed by a corporation about a particular thing is the sum total of all the knowledge which its officers and agents, who are authorized and charged with the doing of the particular thing[,] *[acquire] while acting under and within the scope of their authority.* [*New Properties, Inc v George D Newpower, Jr., Inc.*, 282 Mich App 120, 134; 762 NW2d 178 (2009) (quotation marks and footnotes omitted) (emphasis added).]

Here, even assuming as the trial court did that Iovanna was an agent of Integon as opposed to an agent of the insured,[1] Iovanna did not acquire any knowledge about Laura and Terry's possible relocation to Michigan while she was "acting under and within the scope of [her] authority" as a licensed insurance agent of Integon. *Id.* Iovanna testified that she had a "side relationship," with Laura and it was during the course of this "side relationship" that Iovanna acquired her knowledge about Laura and Terry's potential relocation to Michigan. Specifically, Iovanna testified that Laura stopped by her residence one evening apparently in September 2011, shortly after Iovanna's spouse passed away. According to Iovanna, it was during this personal visit that Laura first mentioned looking for a job in Michigan. Iovanna also testified that she later visited the bank where Laura worked one day and Laura again referenced looking for a job in Michigan. Thus, Iovanna did not acquire the requisite knowledge of Laura and Terry's potential move when she was "doing a thing which is in connection with and pertinent to that part of the corporation business which [she was] employed, or authorized or selected to do. . . ." *Id.* Because Auto-Owners failed to present any other evidence to show that Iovanna acquired knowledge about the potential relocation while she was acting within the scope of her agency relationship with Integon, the trial court erred as a matter of law in imputing her knowledge to Integon. *Id.*

Aside, from Iovanna's private conversations with Laura, there was no evidence to support that Integon knew or reasonably should have known that Laura and Terry relocated to Michigan during the time that the North Carolina policy was in effect. Evidence that the Toyota was registered in Michigan and evidence that both drivers had Michigan drivers licenses showed that Laura and Terry had connections to Michigan. However, in applying for the insurance policy, Laura and Terry represented that the vehicles would be garaged in North Carolina, they provided a North Carolina residential address, and then revised that address when they moved to another locality in North Carolina. Laura and Terry continually renewed, albeit belatedly, the policy from April 2009 through October 2011 without indicating to the Wagoner Agency or Integon that they had relocated to Michigan or that the vehicles were garaged anywhere other than North Carolina. See *Hammoud v Metropolitan Prop & Cas Ins Co*, 222 Mich App 485, 489; 563 NW2d 716 (1997) ("an insurer does not owe a duty to the insured to investigate or verify that individual's representations or to discover intentional material misrepresentations.").

---

[1] We make no determination regarding whether the trial court erred in its choice of law analysis.

Iovanna and Dowell both testified that Integon sent payment coupons to Laura and Terry's North Carolina address that contained spaces to inform the company that they had changed addresses. However, there was no evidence to show that Laura and Terry ever filled out one of the coupons or otherwise informed the Wagoner Agency or Integon that they had relocated to Michigan. Instead, Laura and Terry renewed their North Carolina policy in October 2011, by paying the renewal premium and in doing so they did not update their address. On this record, based on the representations Laura and Terry made to the Wagoner Agency and Integon, there was no issue of fact to support that Integon could "reasonable have been expected to have known [] that its insured" relocated to Michigan at any time when the policy was in effect or when it renewed in October 2011. *Farm Bureau*, 233 Mich App at 43. Accordingly, the trial court erred in denying Integon's counter-motion for summary disposition pursuant to MCR 2.116(I)(2).[2]

In sum, the trial court erred as a matter of law in imputing Iovanna's knowledge to Integon and there were no other facts to support that Integon reasonably should have known that its insureds were residents of Michigan at the time the North Carolina policy was issued, renewed, or at any time that it was in effect. Accordingly, Integon was not required to provide no-fault benefits under MCL 500.3012 and the trial court erred in granting Auto-Owners' motion for summary disposition and in denying Integon's counter-motion for summary disposition.

Reversed and remanded for entry of judgment in favor of defendant. Defendant having prevailed, may tax costs. MCR 7.219(A). We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell

---

[2] Given our resolution of this issue, we need not address whether the trial court erred in holding that Terry Dunn was a "named insured" under the North Carolina policy.