*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMY JEAN JO SOBESKY,

        Plaintiff-Appellant,

v

GEICO GENERAL INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
February 11, 2025
1:47 PM

No. 368710
Kent Circuit Court
LC No. 22-007491-NZ

Before: SWARTZLE, P.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendant, and dismissing plaintiff's claims for personal injury protection (PIP) benefits under theories of negligence and misrepresentation, pursuant to MCR 2.116(C)(8) (failure to state a claim), and MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. BACKGROUND

This appeal arises as the result of a car accident in which plaintiff was driving her car with two nieces as passengers, and was struck head-on by a drunk driver traveling in the wrong direction, ultimately causing plaintiff to sustain severe injuries.

In early 2019, plaintiff was residing at 331 Carlton Avenue in Grand Rapids with her sister, and owned a 2008 Toyota Yaris, which was insured by defendant, who had been plaintiff's no-fault insurer for several years. In July 2019, plaintiff moved to California, renting a room at 301 Kessler Drive in the city of Ben Lomond, and worked as an independent contractor for Apple Inc. Approximately one month before moving to California, plaintiff called defendant and "mentioned that [she] was going to take a job [in California], and [she] had an address where [she would] be staying and [she] didn't know how long. And [defendant] told [her] to change the address" on her policy in order to obtain full "California coverage." Plaintiff maintained that "full coverage" to her meant that "everything would be covered, like if there was an accident, if [she] hit somebody, [or] if they hit [her]." As a result of this phone call, plaintiff's policy was changed to add 301 Kessler Drive in California as her residence, additional benefits were added for Collision and Comprehensive coverage, and the PIP coverage present in her Michigan policy was removed.

Plaintiff subsequently moved from her initial California residence to a new address at 7985 Highway 9, also in Ben Lomond. Plaintiff called defendant and updated the address on her policy to reflect the new location. Plaintiff testified that, in February 2020, she moved again, this time to the city of Felton, which was adjacent to Ben Lomond. Plaintiff did not call defendant to change her insurance policy to reflect the Felton address.

Between March and July 2020, plaintiff returned to Michigan, taking "things that were . . . important" with her while leaving behind "other of [her] belongings" including her car parked at her address in Felton. She flew to Michigan to stay with her sister in Grand Rapids because the COVID pandemic "lock down" was in effect and she was going to help her sister "homeschool the kids while they were . . . taking online classes." Plaintiff stated that, while she was staying with her sister in Michigan, her "position [at Apple] was shut down" because of the COVID pandemic.

In July 2020, plaintiff returned to Felton, but did not have a job and her "unemployment wasn't covering the rent, so [she] couldn't stay there," and planned to "move out" and return to Michigan in September, but "had to evacuate because of the [wild] fires in August" 2020. Plaintiff thus drove her 2008 Toyota Yaris, insured by defendant, back to Michigan in August 2020, leaving "some things to [her] friends to hold onto and, [bringing] most of the stuff [she] had" back to Michigan with her. Plaintiff clarified that she left some things behind with her friends in California to "use and borrow," and that "if [she] didn't come back, they could just have it," because she was uncertain whether she would be returning to California. Plaintiff testified that when she "came back to Michigan" in August 2020, she lived with her sister in Grand Rapids until the subject accident took place. Regarding any plans plaintiff had about where she would live and work, plaintiff stated the following:

> I didn't have any plans. I came back [to Michigan] because I couldn't pay the rent. I had . . . this great job that closed, and then I had to go live with family [in Michigan]. I went back to my sister's house because I didn't have a plan.

In mid-October 2020, plaintiff called defendant and spoke to defendant's agent "to get [her] insurance changed," and notified the agent that she was "staying at her sister's house" in Michigan. Plaintiff explained that, during this call, she updated the e-mail address on her insurance policy, but did not update her residential address, and so the policy retained the address in Ben Lomond. When asked about updating her address, plaintiff stated, "I don't remember them asking, I don't remember thinking about it," and that she "was staying with [her] family through COVID" and "wasn't necessarily thinking [she] was going to change [her] address." Plaintiff maintained that defendant's agent did not tell her that she should update her policy with a Michigan address, and instead told her that she was "fine" with "the insurance [she] had and how it was all set up." As to whether plaintiff informed defendant that she was moving back to Michigan, she testified:

> Q. And so did you ever tell [defendant] that you were living at 331 Carlton Avenue [in Grand Rapids] before the accident?

> A. When I called in October to get my insurance changed, I said that I was staying at my sister's house, and . . . I don't think we changed the address, but I don't remember.

*Q.* Okay. Did you tell [defendant] that you were moving there?

*A.* No, I don't think so. I . . . think I said I don't know what's happening because of COVID and I'm staying with my family right now.

* * *

*A.* I remember calling [defendant] and saying I'm in lock down, I'm not driving the car very much. So I have full coverage, what can we do to change my plan so that . . . I'm not paying full coverage because I'm not driving[?] And what do I need to do to drive safely in Michigan[?] And they said that I was fine with my coverage.

Plaintiff recalled telling defendant's agent during this call that she would "be remaining in Michigan, at least until [she] had a job to return to at Apple in California" or "until COVID ended." Plaintiff stated that the agent did not explain to her "why she thought [plaintiff] was okay to drive on [her] current policy in Michigan," only that plaintiff "had coverage," and that "if [plaintiff] was planning to go back to California, that [plaintiff] would be covered." According to plaintiff, the agent did not explain what specific "line item coverages were removed" when she chose to remove "full coverage" from her policy.[1]

According to plaintiff, during this call she relied on defendant's agent's statements that her insurance policy was adequate and so she allowed her policy, still containing her address in Ben Lomond, to automatically renew for six months, while she was living with her sister in Michigan. In the spring of 2021, plaintiff renewed her policy while retaining the Ben Lomond address as her residential address on the policy. Ultimately, plaintiff's insurance policy did not contain the PIP coverage required by Michigan's no-fault act, 500.3101 *et seq*. The car accident that injured plaintiff occurred on April 17, 2021.

Plaintiff claimed PIP benefits for herself and her nieces from defendant under her insurance policy, but defendant denied them on the basis of her failure to maintain insurance in accordance with the no-fault act. Plaintiff then filed a complaint against defendant for "negligence/errors and omissions," and for "misrepresentation and innocent misrepresentation," with regard to defendant's agent's alleged failure to properly advise plaintiff about "the nature and extent of the coverage" that defendant offered and provided. Plaintiff maintained that a "special relationship was created between Plaintiff and Defendant by the [latter's] agent's misrepresentations in October 2020," and that, on the basis of this relationship, the agent assumed a duty to advise her on the adequacy of her insurance coverage, which the agent breached, resulting in plaintiff having no valid Michigan no-fault insurance on the day of her accident.

Defendant moved for summary disposition, asserting that its "captive agent did not owe Plaintiff a duty to advise her as she demands," and that plaintiff was comparatively at fault for

---

[1] Plaintiff's deposition testimony provided the only evidence in the record regarding the October 2020 phone conversation.

failing to procure the insurance Michigan law required. The trial court ultimately granted the motion and dismissed plaintiff's claims. The trial court held that the circumstances did not create a special relationship between the parties that engendered a legal duty for purposes of a negligence claim. In regard to plaintiff's misrepresentation claim, the trial court characterized plaintiff's position as "disingenuous," and opined that "if anybody made any misrepresentations, it was [plaintiff]."

## II. ANALYSIS

## A. SPECIAL RELATIONSHIP

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Cetera v Mileto*, 342 Mich App 441, 446; 995 NW2d 838 (2022). "When reviewing a motion brought under MCR 2.116(C)(10), 'a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties . . . in the light most favorable to the party opposing the motion.' " *Yang v Everest Nat'l Ins Co*, 507 Mich 314, 320; 968 NW2d 390 (2021) (citation omitted). "Summary disposition is appropriate where no genuine issue of material fact exists. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citations omitted).

MCL 500.3101(1) provides that "the owner or registrant of a motor vehicle required to be registered in [Michigan]" must obtain Michigan no-fault insurance, which is "required to be in effect during the period the motor vehicle is driven or moved on a highway." The required insurance policy must include PIP coverage, property-damage coverage, and residual liability coverage. MCL 500.3101(2). Under MCL 257.216(1), "[e]very motor vehicle" (with certain exceptions) "driven or moved on a street or highway" in Michigan must be registered within the state. MCL 500.3102(1) states that "[a] nonresident owner or registrant of a motor vehicle or motorcycle not registered in this state shall not operate or permit the motor vehicle or motorcycle to be operated in this state for an aggregate of more than 30 days in any calendar year" unless he or she maintains the required Michigan no-fault insurance.

Pursuant to MCL 500.2005(a), a licensed insurance agent is prohibited from omitting "a material fact" or making an "incorrect statement of a material fact" that "[m]isrepresents the terms, benefits, advantages, or conditions of an insurance policy." A plaintiff may have a "cause of action in tort by alleging loss resulting from the insurance agent's failure to procure insurance coverage requested by [the] plaintiff." *Haji v Prevention Ins Agency, Inc*, 196 Mich App 84, 87; 492 NW2d 460 (1992).

"A negligence claim requires that a plaintiff prove the following four elements: (1) a duty owed to the plaintiff by the defendant, (2) a breach of that duty, (3) causation, and (4) damages." *Bialick v Megan Mary, Inc*, 286 Mich App 359, 362; 780 NW2d 599 (2009).

" '[U]nder the common law, an insurance agent whose principal is the insurance company owes no duty to advise a potential insured about any coverage' because the agent's job consists merely of 'present[ing] the product of his principal and tak[ing] such orders as can be secured from those who want to purchase the coverage offered.' " *Zaremba Equip, Inc v Harco Nat'l Ins Co*,

280 Mich App 16, 27; 761 NW2d 151 (2008), quoting *Harts v Farmers Ins Exch*, 461 Mich 1, 8; 597 NW2d 47 (1999) (alterations in original). Defendant asserts that, just like the agent in *Zaremba*, the agent who spoke with plaintiff in October 2020 was "an employee of [defendant]," and acted exclusively on defendant's behalf, and thus, as a captive agent, "had no duty to advise [plaintiff] regarding the sufficiency of her California policy under Michigan law." Plaintiff agrees.

In *Harts*, 461 Mich at 9-10, the Supreme Court stated that, "as with most general rules, the general no-duty-to-advise rule, where the agent functions as simply an order taker for the insurance company, is subject to change when an event occurs that alters the nature of the relationship between the agent and the insured." The following four situations give rise to such a special relationship:

> "(1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured." [*Zaremba*, 280 Mich App at 27-28, quoting *Harts*, 461 Mich at 10-11.]

"When a special relationship exists, an agent assumes a duty to advise the insured regarding the adequacy of insurance coverage." *Zaremba*, 280 Mich App at 27-28. A request for "full coverage" is an "example of an ambiguous request for coverage that might in certain circumstances require clarification." *Harts*, 461 Mich at 10 n 11. "[W]hen an insurance agent elects to provide advice regarding coverage and policy limits, the agent owes a duty to exercise reasonable care." *Zaremba,* 280 Mich App at 36. "The existence of a special relationship is a question of fact." *Stein, Hinkle, Dawe & Assoc, Inc v Continental Cas Co*, 110 Mich App 410, 417; 313 NW2d 299 (1981).

According to plaintiff, three of the special circumstances were created during the October 2020 phone conversation between herself and defendant's agent, giving rise to a special relationship engendering defendant's agent's duty to plaintiff to advise her regarding the adequacy of her coverage. First, plaintiff argues that defendant's agent misrepresented the adequacy of plaintiff's insurance policy. Second, plaintiff argues that she made "multiple ambiguous requests for coverage that required clarification." And, third, plaintiff argues that although defendant's agent was not required to answer when she asked "what [does she] need to do in order to drive safe with [her] insurance," because the agent chose to answer, the agent then had a duty to advise her on the adequacy of her coverage, which the agent failed to fulfill, having told her that her insurance coverage "was fine."

Plaintiff argues that summary disposition under MCR 2.116(C)(10) was inappropriate because there were genuine issues of fact regarding whether there was a special relationship between plaintiff and defendant's agent that created a duty to advise plaintiff regarding the adequacy of her insurance policy. Plaintiff further asserts that the agent breached that duty when the agent falsely stated that plaintiff's California policy was sufficient for plaintiff's Michigan driving, and failed to issue plaintiff the policy she specifically requested.

Moreover, plaintiff asserts that the agent was liable even without the existence of a special relationship, because plaintiff did not receive the insurance coverage she ordered from the agent. See *Haji*, 196 Mich App at 87. Plaintiff insists that she asked the agent for "whatever" she would need "to drive safely in Michigan," and the agent failed to deliver this, and instead told her that the California coverage "was fine"; therefore, plaintiff did not receive the policy she requested, with the result that she failed to have the required Michigan no-fault coverage on the date of her car accident.

Plaintiff's arguments are without merit. The undisputed record evidence demonstrated that no special relationship was established creating a duty for defendant's agent to advise plaintiff on the adequacy of her insurance policy. Defendant's agent did not misrepresent the nature or extent of the coverage, plaintiff did not make any ambiguous request or statement calling for clarification, defendant's agent did not offer plaintiff unsolicited advice, and the advice given was not inaccurate. See *Zaremba*, 280 Mich App at 27-28. There was no evidence that defendant's agent provided plaintiff with any false or otherwise misleading statements regarding her insurance policy.

There was no evidence that plaintiff gave defendant's agent any indication that she was relocating to Michigan permanently or even indefinitely. When asked if she ever told defendant's agent that she was relocating to Michigan, plaintiff repeatedly answered "[n]o, I don't think so," "I don't' remember," and "I don't know." In the spring of 2021, just before the subject accident, plaintiff renewed her car insurance policy without updating her residential address, leaving the policy address as the Ben Lomond address. Plaintiff faulted defendant's agent for not telling her that she "should update [her] address to a Michigan address," but, as defendant correctly argues, "neither defendant nor its agent has an independent duty to investigate an insured's representations." See *Farm Bureau Ins Co v Allstate Ins Co*, 233 Mich App 38, 43; 592 NW2d 395 (1998) ("From all indications, [the] insured only used an Indiana address in connection with the transaction," and so the insurer "could not reasonably have been expected to have known when the policy was issued that its insured was actually a Michigan resident.").

Here, the advice of the agent was based on plaintiff's explanation that she came from California, with a California insurance policy attached to a California residential address, and was currently staying in Michigan, but intending to go back to California as soon as she was able.[2] Plaintiff insists that the agent gave her false information because, under the 30-day grace period provided in MCL 500.3102(1), plaintiff's California policy was insufficient because plaintiff's car was registered in Michigan and so plaintiff was legally required to maintain a Michigan no-fault policy. However, there is no indication that plaintiff ever notified the agent that her car was registered in Michigan, only that she had an existing California insurance policy with a California residential address. And, as defendant correctly asserts, "if [plaintiff] knew her vehicle was registered in Michigan, despite maintaining her residence in California, it was incumbent upon [her] to [so] inform the agent."

_____

[2] Plaintiff's testimony on the temporary nature of her stay in Michigan, or at least the equivocation of her plans to stay, was confirmed by the testimony of both her sisters.

Moreover, the record does not indicate that plaintiff asked for, or ordered, an insurance policy that defendant's agent failed to deliver; she asked only if she could "drive safely" in Michigan under her policy. Defendant's agent answered that her existing policy was sufficient to cover her during her stay in Michigan, and, under the circumstances known to the agent, this was not false or otherwise misleading information.

For these reasons, the trial court correctly concluded as a matter of law that under the undisputed facts there was no special relationship between plaintiff and defendant's agent giving rise to a duty to advise plaintiff regarding the adequacy of her insurance coverage, and therefore that no such duty could have been breached.

## B. MISREPRESENTATION

Next, plaintiff argues that defendant never asked the trial court to dismiss her claims of misrepresentation and innocent misrepresentation, and that the trial court erred by dismissing them sua sponte.

The elements of misrepresentation are

> (1) [t]hat [the]defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by [the] plaintiff; (5) that [the] plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. [*Kassab v Mich Basic Prop Ins Ass'n*, 441 Mich 433, 442; 491 NW2d 545 (1992), overruled in part on other grounds by *Haynes v Neshewat*, 477 Mich 29, 38-39 (2007) (quotation marks and citations omitted).]

"A claim of innocent misrepresentation is shown if a party detrimentally relies upon a false representation in such a manner that the injury suffered by that party inures to the benefit of the party who made the representation." *M&D, Inc v McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998). Innocent misrepresentation does not require a showing of "*fraudulent purpose* or an intent on the part of the defendant that the misrepresentation be acted upon by the plaintiff," but does require that an "unintendedly false representation was made in connection with the making of a contract and that the injury suffered as a consequence of the misrepresentation inure to the benefit of the party making the misrepresentation." *Id.* at 28.

According to plaintiff, defendant made a material misrepresentation when its agent falsely told plaintiff that she was safe to drive in Michigan under her existing California policy, when in fact plaintiff was required by law to have a Michigan no-fault policy, and plaintiff's reliance on that advice directly caused her losses when she was unable to collect PIP benefits, or pursue a bodily injury claim against the at-fault driver or that driver's insurer. Moreover, plaintiff argues that her injury inured to the benefit of defendant because she continued to pay defendant premiums while living in Michigan and lacking appropriate coverage, therefore leaving defendant without responsibility for any costs attendant to plaintiff's medical care and recovery.

Plaintiff's arguments fail for the same reasons as her claims for negligence based upon errors and omissions. Contrary to plaintiff's argument, defendant did ask the trial court to dismiss all of plaintiff's claims in its motion for summary disposition and brief in support. As defendant correctly argues, plaintiff's claims of misrepresentation are essentially identical with her claims for negligence based upon errors and omissions, because in setting forth the misrepresentation claims plaintiff simply reiterated her allegations that defendant's agent gave plaintiff false advice and materially misrepresented the nature or adequacy of her insurance coverage, with the result that plaintiff did not have the appropriate Michigan no-fault PIP coverage at the time of her car accident. Because plaintiff could not prove that a special relationship existed between herself and defendant's agent giving rise to a duty for the agent to advise plaintiff on the adequacy of her car insurance, and because defendant's agent made no false statements or misrepresentations to plaintiff, plaintiff failed to create a genuine issue of material fact on her misrepresentation claims.[3]

Affirmed.

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray

---

[3] Plaintiff points out that, although the trial court never discussed or decided the issue of contributory or comparative negligence, it was argued by the parties in the trial court. Although the issue was raised by defendant and briefed by both parties below, it was not decided, or even mentioned, by the trial court during the hearing on defendant's motion for summary disposition or in the court's opinion and order deciding the motion. That issue is irrelevant.