# STATE OF MICHIGAN

# COURT OF APPEALS

KAITLIN HAHN,

        Plaintiff-Appellee,

v

GEICO INDEMNITY COMPANY,

        Defendant-Appellant,

and

AUTOMOBILE CLUB INSURANCE
ASSOCIATION,

        Defendant.

UNPUBLISHED
June 12, 2018

No. 336583
Oakland Circuit Court
LC No. 2016-152229-NF

---

Before: SAWYER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant, Geico Indemnity Company (Geico), appeals by leave granted[1] the trial court's opinion and order, which denied Geico's motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm in part, reverse in part, and remand for further proceedings.

Plaintiff, Kaitlin Hahn, grew up in Michigan. She met her future husband, Zachary Waller, while the two were in high school. Waller joined the Marines after graduating high school. Plaintiff graduated two years later. In April 2015, plaintiff drove to North Carolina to visit Waller, who was stationed there. While in North Carolina, the two married and purchased a townhouse, where the two lived together. Both intended to sell or lease the townhouse and return to Michigan after Waller finished his service with the Marines, which was to occur in January 2017. On July 17, 2015, plaintiff and Waller began a long drive back to Michigan for a planned celebration of their wedding. Waller was driving at about 4:00 a.m. the morning of July

---

[1] *Hahn v Geico Indem Co*, unpublished order of the Court of Appeals, entered May 17, 2017 (Docket No. 336538).

18, 2015, when he fell asleep. Waller lost control of his truck and drove into a ditch. Plaintiff was rendered a quadriplegic as a result.

After the accident, plaintiff filed a claim with Geico, who insured Waller's truck under a policy issued in North Carolina. Geico responded with a letter dated February 22, 2016 explaining that it had determined that plaintiff was entitled to up to $500,000 in benefits pursuant to MCL 500.3163. This statute provides, in pertinent part:

> (1) An insurer authorized to transact automobile liability insurance and personal and property protection insurance in this state shall file and maintain a written certification that any accidental bodily injury or property damage occurring in this state arising from the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle by an out-of-state resident who is insured under its automobile liability insurance policies, is subject to the personal and property protection insurance system under this act.

> * * *

> (3) Except as otherwise provided in subsection (4), if a certification filed under subsection (1) or (2) applies to accidental bodily injury or property damage, the insurer and its insureds with respect to that injury or damage have the rights and immunities under this act for personal and property protection insureds, and claimants have the rights and benefits of personal and property protection insurance claimants, including the right to receive benefits from the electing insurer as if it were an insurer of personal and property protection insurance applicable to the accidental bodily injury or property damage.

> (4) If an insurer of an out-of-state resident is required to provide benefits under subsections (1) to (3) to that out-of-state resident for accidental bodily injury for an accident in which the out-of-state resident was not an occupant of a motor vehicle registered in this state, the insurer is only liable for the amount of ultimate loss sustained up to $500,000.00. Benefits under this subsection are not recoverable to the extent that benefits covering the same loss are available from other sources, regardless of the nature or number of benefit sources available and regardless of the nature or form of the benefits.

It is undisputed that Geico has, in fact, paid $500,000 in benefits to plaintiff. There is no indication in the record that Geico seeks to recoup any part of this amount from plaintiff.

Plaintiff filed suit in March 2016, seeking a declaration regarding whether defendant Automobile Club Insurance Company (ACIA), who insured plaintiff's father, Geico, or both companies were responsible for paying benefits to plaintiff pursuant to the no-fault act, MCL

-2-

500.3101 *et seq.*[2] Her theory against ACIA was that she was entitled to benefits under her father's policy because she was domiciled with him at the time of the accident. With respect to Geico, plaintiff quoted, but did not cite, the language of MCL 500.3163(1) in her complaint. In contravention of the plain language of MCL 500.3163(4), she requested a declaration that Geico's liability was not limited to $500,000.

The focus of discovery was on residency. The depositions taken in this matter were done so under an agreement that residency was the only issue to be delved into. The parties planned to resolve this question, and then participate in additional discovery if required. ACIA sought summary disposition pursuant to MCR 2.116(C)(10) on the basis that plaintiff was not domiciled with her father. Geico sought summary disposition pursuant to MCR 2.116(C)(10) on the basis that Waller and plaintiff both resided in Michigan, and thus, plaintiff could not be entitled to benefits under MCL 500.3163. In response to ACIA, plaintiff argued that she did reside with her father. In response to Geico, plaintiff argued that under the equitable "mend-the-hold" doctrine, which we discuss later in this opinion, Geico was estopped from taking a different position in the present suit than it had in its February 22, 2016 correspondence. And while her logic was not exactly clear, plaintiff went on to argue that by taking the position that it had no liability under MCL 500.3163, Geico was also estopped from limiting its liability to $500,000.

ACIA and Geico also filed responses to each other's motions. Specifically, ACIA contended that pursuant to MCL 500.3012 and this Court's decision in *Farm Bureau Ins Co v Allstate Ins Co*, 233 Mich App 38; 592 NW2d 395 (1998), the policy Geico issued to Waller should be reformed into one providing Michigan no-fault benefits, and that if so reformed, Geico would be responsible for plaintiff's entire loss. In response, Geico continued to argue that MCL 500.3163 was inapplicable. Geico also pointed out that even if the statute applied, it had paid plaintiff $500,000, and thus, satisfied any obligation under the statute. In response to ACIA's discussion of MCL 500.3012, Geico argued that the statute was inapplicable on the facts presented in this suit.

The trial court dispensed with oral argument and issued a 34-page opinion and order. The trial court concluded that (1) plaintiff and Waller were domiciled in Michigan, (2) plaintiff was not domiciled with her father at the time of the accident, and (3) factual disputes remained with regard to the application of the mend-the-hold doctrine and MCL 500.3012. Because plaintiff was not domiciled with her father, the court granted summary disposition in favor of ACIA. But because factual disputes remained with regard to plaintiff's claims against Geico, the trial court denied Geico's motion. Geico sought leave to appeal in this Court, and this Court granted leave, limited to "the issues raised in the application and supporting brief." *Hahn v Geico Indem Co*, unpublished order of the Court of Appeals, entered May 17, 2017 (Docket No. 336538).[3]

---

[2] Plaintiff later amended the complaint to add a claim for the nonpayment of no-fault benefits against both insurers.

[3] While the application and supporting brief raised four separate contentions of error, Geico has now abandoned two of these issues: (1) that the trial court erred when it found that plaintiff and

-3-

## I. MCL 500.3012

Geico first argues that the trial court erred in determining that genuine issues of material fact existed concerning the potential applicability of MCL 500.3012. We disagree.

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law. In making this determination, the Court reviews the entire record to determine whether defendant was entitled to summary disposition." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Id*. at 120.]

The proper interpretation of a statute is a question of law reviewed de novo on appeal. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 102; 754 NW2d 259 (2008).

This Court addressed MCL 500.3012 in *Farm Bureau Ins Co*, 233 Mich App at 38. In that case, similar to the present case, the plaintiff sought a declaration regarding which of two insurers was responsible for the payment of no-fault benefits. *Id*. at 39. This Court first concluded that the trial court did not clearly err when it determined that "Allstate's insured was a resident of Michigan who was domiciled with the accident victim, also a Michigan resident, and that the accident victim was a resident relative of Allstate's insured, MCL 500.3114 . . . ." *Id*. at 40. Because the insured was not a nonresident of Michigan, MCL 500.3163 was not applicable. *Id*. at 40-41.

This Court then went on to explain that there was "no reasonable basis in the record to conclude that Allstate violated Michigan law in issuing an Indiana insurance policy to [Allstate's insured] because there is no evidence from which one may reasonably determine that Allstate should have known that she was a Michigan resident." *Id*. at 41. This Court recognized the existence of MCL 500.3012, and explained that "the basic purpose of [MCL 500.]3012 is to treat an insurance policy that an insurer issues *purporting to be a Michigan policy that complies with Michigan law* as such even if the written terms of the policy are inconsistent with Michigan law." *Farm Bureau*, 233 Mich App at 41. This Court further explained, "the Indiana insurance policy issued by Allstate in this case was not issued 'in violation of' the no-fault act because

---

Waller were domiciled in Michigan, and (2) that the trial court erred when it found that there exists a factual question regarding whether plaintiff was a "spouse" under the terms of its policy. While plaintiff continues to argue for the affirmance of the trial court's decisions in this regard, we need not reach them, because Geico no longer challenges those points.

-4-

Allstate neither purported to issue a policy that complied with Michigan's no-fault act nor knew that it was dealing with a Michigan resident." *Id*. at 42.

In the present matter, the trial court found that a factual question existed regarding whether reformation was appropriate under MCL 500.3012. The trial court reached this conclusion on the basis of factual questions arising from the record evidence regarding whether Geico should have known that Waller was a Michigan resident. We agree with the trial court's determination. *Farm Bureau Ins Co* indicates that if an insurer knows, or has reason to know, that the individual seeking insurance is a Michigan resident, but the insurer nonetheless issues a policy that does not provide Michigan no-fault coverage, MCL 500.3012 may be invoked to reform the policy to one providing Michigan no-fault coverage. See *Farm Bureau Ins Co*, 233 Mich App at 41 (finding no basis to invoke the statute under the factual circumstances of that case because "there is no evidence from which one may reasonably determine that Allstate should have known that [its insured] was a Michigan resident."). See also *id*. at 43 n 2 ("We emphasize that a case in which an insurer is aware that it is dealing with a Michigan resident and nevertheless issues an out-of-state automobile insurance policy that does not comply with Michigan's no-fault act would be a far different circumstance.").

There is record evidence indicating that Geico knew, or at a minimum, had reason to know, that Waller was a Michigan resident when he obtained the policy. Waller's address is listed as a Michigan address on the face of the policy. Waller also had a Michigan driver's license. Further, the declarations page noted that the vehicles would be garaged in North Carolina, but at a military base. This Court has found that an individual's temporary military address has little or no effect on one's place of domicile for purposes of the no-fault act. *Salinger v Hertz Corp*, 211 Mich App 163, 166-167; 535 NW2d 204 (1995). See also *id*. at 166 ("Because military personnel often do not have a choice of where they are stationed, there is a presumption in favor of retaining domicile in one's home state."). Under the circumstances, we agree with the trial court that genuine issues of material fact existed with regard to whether Geico knew, or should have known, that Waller was a Michigan resident who required a Michigan no-fault policy. Under *Farm Bureau Ins Co*, this is enough to trigger the potential applicability of MCL 500.3012.

Summary disposition with regard to this aspect of the suit is also inappropriate for an entirely different reason. It is generally premature to grant summary disposition when discovery on a disputed issue has not been completed. *Oliver v Smith*, 269 Mich App 560, 567; 715 NW2d 314 (2006). "However, summary disposition may nevertheless be appropriate if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's position." *Id*. (quotation marks and citation omitted). Here, the parties conducted discovery under an agreement to limit the subject matter of depositions to the residency questions that have now been resolved. Once these questions were resolved, the parties planned to conduct additional discovery, taking additional depositions, on any remaining issues. As it pertains to MCL 500.3012, while residency is a relevant concern, the primary question is Geico's knowledge at the time Waller obtained the policy. Discovery into this particular issue would not appear to have even begun. And given the facts that have been discovered, we certainly cannot conclude that further discovery stands no reasonable chance of uncovering further relevant facts. Thus, it would have been premature for the trial court to grant summary disposition in Geico's favor once MCL 500.3012 became a part of this suit.

Geico tries to avoid this result by arguing that *Farm Bureau Ins Co* need not be followed, and that its construction of MCL 500.3012 is flawed and not congruent with the text of the statute. Geico also raises what are best categorized as practical or public policy concerns if the decision is followed. There are a few issues with Geico even raising these questions in this appeal. First, these arguments were not made in the trial court, and thus, are not preserved. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). We could decline to consider the arguments for this reason. *Tingley v Kortz*, 262 Mich App 583, 588; 688 NW2d 291 (2004). However, this Court may, in its discretion, address "a legal issue not raised by the parties." *Id*. These unpreserved issues present legal questions, and as such, may be addressed by this Court.

But there is a second, and more serious hurdle: Geico's application for leave did not raise these arguments. Rather, Geico's application only further explained the position Geico took in the trial court: that the present matter does not present the sort of circumstances warranting application of MCL 500.3012 under the holding of *Farm Bureau Ins Co*. This Court's order granting leave limited the appeal to "the issues raised in the application and supporting brief." *Hahn v Geico Indem Co*, unpublished order of the Court of Appeals, entered May 17, 2017 (Docket No. 336538). Geico's attempt to challenge whether *Farm Bureau Ins Co* should be followed, whether the decision is correct, or whether following it would present practical or public policy concerns are questions not properly before this Court.

In any event, were these questions properly before us, we would reach the same conclusion. Geico recognizes that we are bound by *Farm Bureau Ins Co* because it is a published decision of this Court issued after November 1, 1990. MCR 7.215(C)(2) and (J)(1). But Geico contends that the relevant holding of the case is mere obiter dictum that this Court need not follow. Geico is incorrect. "Statements concerning a principle of law not essential to determination of the case are obiter dictum and lack the force of an adjudication." *Gallagher v Keefe*, 232 Mich App 363, 373; 591 NW2d 297 (1998) (brackets, quotation marks, and citation omitted). The discussion of MCL 500.3012 in *Farm Bureau Ins Co* was clearly essential to a proper determination of the case. The discussion of the topic dispelled one potential avenue for requiring an insurer to provide personal protection insurance (PIP) benefits. Indeed, that very discussion was the topic of the dissent in that case, which would have reached the opposite result based on the dissenting judge's analysis of the issue. *Id*. at 47-51 (GRIFFIN, J., dissenting). Further, "an issue that is intentionally addressed and decided is not dictum if the issue is germane to the controversy in the case, even if the issue was not necessarily decisive of the controversy in the case." *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 563; 741 NW2d 549 (2007). Even if the relevant holding of *Farm Bureau Ins Co* is not seen as dispositive, there can be no dispute that the issue was intentionally addressed, and that the issue was germane to the controversy. Thus, the *Farm Bureau Ins Co* Court's holding with respect to MCL 500.3012 is not obiter dictum. We therefore decline Geico's invitation to not follow binding precedent of this Court with respect to MCL 500.3012.

## II. MCL 500.3163 AND THE "MEND-THE-HOLD" DOCTRINE

Geico next contends that the trial court erred when it found that factual questions remained regarding the application of the mend-the-hold doctrine, which plaintiff cited in the

trial court to rebut Geico's contention that it could not be liable under MCL 500.3163. We agree.

The relevant statute, MCL 500.3163, is applicable when there is an accident "occurring in this state arising from the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle by an out-of-state resident . . . ." MCL 500.3163(1). The statute requires insurers who are "authorized to transact automobile liability insurance and personal property protection insurance in" Michigan to "file and maintain a written certification that," if such an accident occurs, an out-of-state resident who is insured by the insurer is subject to the provisions of Michigan's no-fault act. MCL 500.3163(1). As this Court has explained, MCL 500.3163 "subjects the out-of-state insurer to the *entire* Michigan personal and property insurance system when *any* accidental bodily injury arising from an out-of-state insured's ownership or use of a motor vehicle occurs[]" in Michigan. *Tevis v Amex Assurance Co*, 283 Mich App 76, 84; 770 NW2d 16 (2009).[4] However, the insurer's ultimate liability under the statute is capped; under the statute, the insurer "is only liable for the amount of ultimate loss sustained up to $500,000.00." MCL 500.3163(4). Defendant initially believed that the statute applied, likely based on the fact that it insured Waller, who owned a home in North Carolina, and was married to plaintiff, who lived with him in North Carolina.

But as it turns out, through discovery and under the trial court's unchallenged decision on the question, it has been determined that both plaintiff and Waller were, in fact, domiciled in the state of Michigan. Thus, Geico had no duty to pay any benefits under the statute. See *Farm Bureau Ins Co*, 233 Mich App at 40-41 (because the insured was a "resident of Michigan domiciled in this state," she was not a nonresident, and thus, MCL 500.3163 "has no application . . . ."); *Tienda v Integon Nat'l Ins Co*, 300 Mich App 605, 613; 834 NW2d 908 (2013) (where the insured is not a non-resident of Michigan, § 3163 will not apply and will not be used to impose responsibility for the payment of no-fault benefits by an out-of-state insurer). Regardless, Geico has paid plaintiff $500,000 in benefits, thus even if the statute applied, Geico met its obligation, and plaintiff would be entitled to nothing more in this suit.

Nonetheless, plaintiff contended in the trial court that Geico was responsible for unlimited damages, even though her basis for Geico's liability was MCL 500.3163. Plaintiff relied on the mend-the-hold doctrine. The doctrine is essentially an equitable theory of estoppel designed to prevent a party from changing positions after litigation has commenced. " 'Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estoped from doing it by a settled principle of law.' " *CE Tackels, Inc v Fantin*, 341 Mich 119, 124; 67 NW2d 71 (1954), quoting *Railway Co v McCarthy*, 96 US 258, 267, 268; 24 L Ed 693; 6 Otto 258 (1877). In the insurance context, Michigan courts will estop an insurer from asserting a defense to an

---

[4] Thus, and while not ultimately relevant to this appeal, it does not matter if the injured party is a Michigan resident or an out-of-state resident; the question is whether the *insured* is an out-of-state resident. *Tevis*, 283 Mich App at 84-85.

action in certain circumstances. As the Michigan Supreme Court stated over 90 years ago in *Smith v Grange Mut Fire Ins Co of Mich*, 234 Mich 119, 122-123; 208 NW 145 (1926):

> This court has many times held, and it must be accepted as the settled law of this state, that, when a loss under an insurance policy has occurred and payment refused for reasons stated, good faith requires that the company shall fully apprise the insured of all the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given notice.

See also *South Macomb Disposal Auth v American Ins Co (On Remand)*, 225 Mich App 635, 695; 572 NW2d 686 (1997), quoting *Lee v Evergreen Regency Coop & Mgt Systems, Inc*, 151 Mich App 281, 285; 390 NW2d 183 (1986) ("This Court has stated that, generally, 'once an insurance company has denied coverage to an insured and stated its defenses, the company has waived or is estopped from raising new defenses.' "). The "doctrine may not be used to broaden policy coverage to protect an insured against risks not included in the policy or expressly excluded from the policy. This restriction is based on the rule that the insurer should not be required, through waiver and estoppel, to cover a loss for which no premium was charged." *South Macomb Disposal Auth*, 225 Mich App at 695-696.

Plaintiff has no basis to invoke the rule in this case. First and foremost, what plaintiff is attempting to do is to have the trial court, under the guise of an equitable remedy, ignore the plain language of MCL 500.3163(4). To do so would be wholly improper. "[I]f courts are free to cast aside a plain statute in the name of equity, even in such a tragic case as this, then immeasurable damage will be caused to the separation of powers mandated by our Constitution." *Trentadue v Buckler Lawn Sprinkler*, 479 Mich 378, 406-407; 738 NW2d 664 (2007). "Statutes lose their meaning if an aggrieved party need only convince a willing judge to rewrite the statute under the name of equity. Significantly, such unrestrained use of equity also undermines consistency and predictability for plaintiffs and defendants alike." *Id*. at 407 (quotation marks and citation omitted). It would be entirely improper to use an equitable doctrine to ignore the plain language of MCL 500.3163(4), which limits Geico's exposure to $500,000.

Even setting that problem aside, the circumstances of this case do not warrant application of the doctrine. Geico informed plaintiff that she was entitled to up to $500,000 in benefits under MCL 500.3163. While Geico later repudiated that position in this suit, Geico nonetheless paid plaintiff exactly what it said it would. Plaintiff has received exactly what Geico represented it would give her. She has suffered no prejudice due to Geico's actions, and cannot be said to have relied on Geico's representation to her detriment. Rather, what plaintiff is attempting to do is to use the doctrine to create additional liability that Geico never once suggested it would assume, and which is clearly not created by the applicable statute. MCL 500.3163(4). This, she cannot do. *South Macomb Disposal Auth*, 225 Mich at 695-696. And in any event, it appears that the reason Geico later argued that MCL 500.3163 did not apply at all was because it gained new information regarding Waller's residency during discovery. Therefore, the trial court erred by holding that there was any sort of factual dispute remaining regarding whether the mend-the-hold doctrine applied in this case.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood